The **FARMERS INSURANCE COMPANY, INC., Plaintiff-Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Mack Via, Shirley Lane, Elvia Huneycutt and Lowanda Huneycutt, Defendants-Respondents.**

No. 11815.

Missouri Court of Appeals, Southern District, Division One.

Feb. 17, 1981.

Motion for Rehearing or to Transfer to Supreme Court Denied March 5, 1981.

Daniel J. McMichael, Fitzsimmons & Fitzsimmons, Attorneys, Inc., Clayton, for plaintiff-appellant.

James R. Reynolds, Ford, Ford, Crow & Reynolds, Kennett, for defendant-respondent, State Farm.

TITUS, Judge.

The Farmers Insurance Company, Inc., (Farmers) brought this declaratory judgment action against State Farm Mutual Automobile Insurance Company (State Farm) and others to determine which insurer should provide primary liability coverage to Mack Via, who was driving a 1972 Toyota automobile belonging to Shirley and Wendy Lane when it figured in a May 6, 1977, vehicular accident. Judgment was entered in the court nisi exonerating State Farm and Farmers appealed.

Farmers was the insurer of Mack Via. As concerns this case, State Farm had three separate automobile liability insurance poli-

cies in force on the accident date. Two of the policies were written, respectively, on a 1974 Oldsmobile and a 1972 Chevrolet and each designated Shirley Lane (mother of Wendy Lane, a minor) as the named insured. The third State Farm policy, written to cover a 1953 Chevrolet pickup truck, designated Lawrence Lane as the named insured. What relationship, if any, existed between Lawrence and Shirley or Wendy is not demonstrated in the record. However, as the parties and the trial court assumed that Shirley was also an insured under the third policy, we shall do likewise. Before the May 6, 1977, casualty and effective February 16, 1977, State Farm had excluded Wendy Lane from its coverage on the 1972 Chevrolet. Similar exclusions were made with respect to the other two policies, but these did not become effective until after the accident in question.

Probably in 1976 and before the May 6, 1977, collision, Shirley Lane, a Dexter resident, purchased a 1963 Plymouth for the use of her minor daughter Wendy, then a college student at Poplar Bluff. Title to the Plymouth was in the joint names of Shirley and Wendy. The daughter Wendy was to secure and pay for liability insurance on the Plymouth and was to be responsible for the expense of its repair, upkeep and operation. No insurance was obtained for the Plymouth and it was never listed as nor claimed to be an insured vehicle in any State Farm policy. Sometime before the end of 1976, the Plymouth developed transmission difficulties. After Wendy made futile payments to a transmission service for repairs, she parked the Plymouth and let it remain standing unused at her Poplar Bluff apartment subsequent to the first part of February 1977. Following the concerned accident, the Plymouth was sold for junk.

On or about April 21, 1977, Shirley Lane purchased a 1972 Toyota for Wendy's use. Title to the car was applied for jointly by Shirley and Wendy. Mother and daughter had the same agreement and understanding as to whom should procure and pay for the Toyota's insurance, repairs, operation and upkeep as they had concerning the Plym-

outh. Nevertheless, neither Wendy nor Shirley procured liability insurance for the vehicle. When it was being driven by Mack Via with Wendy's permission at the time of the May 6, 1977 accident, it was not listed or described as an insured automobile in any of State Farm's three insurance policies.

Two of State Farm's policies written on the 1974 Oldsmobile and 1953 Chevrolet pickup truck defined the term "Newly Acquired Automobile" as follows: "Newly Acquired Automobile—means an automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household,[1] if (1) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (2) provided that no such insurance shall be applicable to such newly acquired automobile unless as a condition precedent the named insured within 30 days following such delivery date applies to the company for insurance on such newly acquired automobile. If more than one policy issued by the company could be applied to such automobile the named insured shall elect which policy shall apply. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile." State Farm's third policy written on the 1972 Chevrolet, which excluded coverage to Wendy Lane, defines "Newly Acquired Car" in this terse fashion: "Newly Acquired Car—means a car newly owned by you or your spouse if it: 1. replaces your car; or 2. is an added car and we insure all other cars owned by you and your spouse on the date of its delivery to you or your spouse; but only if you or your spouse: 1. tell us about it within 30 days after its delivery to you or your spouse; and 2. if you or your spouse has more than one of our car policies, tell us which one is to apply; and 3. pay us any added premium due."

We initially note, as stressed by Farmers, that the so-called automatic coverage afforded by the "Newly Acquired Automobile" segment of State Farm's policies, supra, is of two different varieties. The first, which we label the "replacement variety", concerns the new acquisition by the named insured or the named insured's spouse of an automobile which replaces or takes the place of an insured automobile already owned by either. Or, stated differently, an automobile of the replacement variety is one, the ownership of which has been acquired after the issuance of the policy during the policy period, which replaces a vehicle described in the policy that has been disposed of or has become incapable of further service at the time of replacement. *Beck Motors, Inc. v. Federal Mutual Insurance Co.*, 443 S.W.2d 200, 203 (Mo.App. 1969). When this occurs, all coverage as to the vehicle named in the policy terminates and the coverage is automatically transferred to the replacement automobile for a period of 30 days and will continue thereafter if timely application for coverage of the replacement is made to the insurer and the adjusted premium is paid, all as specified in the policy. *Missouri Managerial Corporation v. Pasqualino*, 323 S.W.2d 244, 249[3] (Mo.App.1959). We are not concerned here, as admitted by Farmers, with the "replacement variety" segment because (1) the 1972 Toyota did not replace any of the three designated vehicles already owned by a named insured or spouse in any one of State Farm's three policies, and (2) the vehicle which the Toyota did, in fact, replace, id est, the 1963 Plymouth, was never denominated as and never became an insured automobile in any policy issued by State Farm.

The second section of the "Newly Acquired Automobile" coverage segment of State Farm policies, concerns the new acquisition by the named insured or the named insured's spouse of an <u>additional</u> vehicle at a time when the company is the insurer of all other automobiles already

---

1. The phrase "if a resident of the same household" does not appear in the policy written on the 1974 Oldsmobile wherein Shirley Lane is the name insured.

owned by either. When this occurs, the coverage provided by the policy covering such already owned and retained vehicles, is automatically extended to cover the new additional acquisition for a period of 30 days and will continue thereafter if timely application for coverage of the new additional acquisition is made to the insurer and the computed additional premium is paid, all as specified in the policy. Farmers chooses to denominate this as "fleet coverage." With apologies to William Shakespeare, "What's in a name?" But if the appellation appeases Farmers, we do not protest.

As seen from the foregoing, to qualify under the "fleet coverage" provision, the new acquisition must have been made via the addition of a vehicle *owned either by the named insured or the named insured's spouse* at a time when the company then insured all automobiles owned by either. This presupposes title to the new acquisition is in the name of the insured or in the named insured's spouse. However, and as regards the 1972 Toyota, neither spouse in this instance alone acquired title to that vehicle. As Farmers' exhibit attests, the title applied for, and presumably issued, designated "Shirley & Wendy D. Lane" to be the owner of the Toyota. Irrespective of whether Shirley and Wendy were tenants in common or joint tenants in the Toyota, in either event the whole title to the Toyota would not have been in Shirley and therefore it would not have been a car which she herself owned within contemplation of the insurance policies.

The reasons the trial court may have had in mind or expressed in deciding the cause in favor of State Farm is of no moment here. Our concern is whether the conclusion arrived at was right and not with the route employed in reaching that result. *Kenilworth Ins. Co. v. Cole*, 587 S.W.2d 93, 96[4–5] (Mo.App.1979). Having demonstrated the judgment nisi was correct, it is hereby affirmed.

GREENE, P. J., and FLANIGAN, J., concur.