**Ray and Diane MAGRUDER, Appellants,**

v.

**SHELTER INSURANCE COMPANY, Respondent.**

**No. WD 55961.**

Missouri Court of Appeals, Western District.

Dec. 22, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1999.

Application for Transfer Denied March 23, 1999.

---

1. All statutory references are to RSMo 1994.

Robert Walter Wheeler, Keytesville, for appellants.

Michael J. Tubbesing, Kansas City, for respondent.

Before Chief Judge PATRICIA BRECKENRIDGE, Presiding Judge, JAMES M. SMART and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Plaintiffs–Appellants, Ray and Diane Magruder, appeal the decision of the trial court granting summary judgment to Defendant–Respondent, Shelter Insurance Company (Shelter). The Magruders argue that the trial court erred in granting summary judgment in favor of Shelter because: (1) the language contained in their automobile liability policy restricting the coverage of newly acquired autos is in direct conflict with Missouri public policy, and thus, should not be enforced, and (2) even if the policy does not provide newly acquired auto coverage, Shelter is estopped from denying coverage because the company agreed to accept a late premium payment for the new auto after it learned of the accident. Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Magruders purchased a liability policy from Shelter to cover a 1995 Ford Explorer from January 23, 1996, until April 23, 1996. The Magruders also had a GMC Safari which they separately insured with Shelter in a policy providing coverage from March 25, 1996 through June 25, 1996.

On April 24, 1996, the Magruders let the insurance on their 1995 Explorer expire. Two days later, on April 26, 1996, the Magruders purchased an additional car, a used Nissan 240SX. They informed their Shelter agent of their purchase of the Nissan on May 15, 1996, but told him that, because they would be out of town for two weeks beginning on May 18, 1996, and because the Nissan would not be driven during this time, they did not want to begin paying a premium for liability coverage on the new car until they returned. They also told the Shelter agent that they did want to reinstate the liability policy on their Ford Explorer. They did not ask the agent to make this reinstatement retroactive to the day their prior coverage had lapsed, however—April 24, 1996. Rather, they asked the agent to reinstate the coverage effective on the day of their visit, that is, May 15, 1996, for a three-month period.

Mr. Magruder did drive the Nissan on May 17, 1996, the day before he was to go on vacation, and was involved in an automobile accident. The Magruders sought coverage for the accident through Shelter. Although they admitted that they had not yet paid a premium for the Nissan, they argued that the Nissan was automatically covered for the first 30 days after its purchase on April 26, 1996, under the newly acquired automobile provision of their policies with Shelter. Shelter responded that this provision did not apply, since it required that all of the Magruders' vehicles be insured with Shelter at the time the additional automobile was acquired, whereas the Ford Explorer was not insured by Shelter, or with any company, when the Magruders acquired the Nissan. Shelter therefore denied coverage.

The Magruders then filed this suit, arguing that Shelter's policy did provide coverage for the accident and that Shelter was liable for the $4,000 which the Magruders had paid the driver of the other vehicle in settlement of the latter's claims arising out of the accident. The trial court granted Shelter's motion for summary judgment. The Magruders appeal.

## II. STANDARD OF REVIEW

In reviewing the grant of summary judgment, we look to the entire record to deter-

mine whether there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Dial v. Lathrop R–II Sch. Dist.*, 871 S.W.2d 444, 446 (Mo. banc 1994). We view the record in the light most favorable to the party against whom judgment was entered, and will affirm if the judgment is sustainable under any legal theory. *ITT Comm. Fin. Corp. v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993).

## III. THE NISSAN IS NOT COVERED UNDER SHELTER'S POLICY, AND MISSOURI PUBLIC POLICY DOES NOT REQUIRE IT TO BE COVERED

The Magruders claim that their Nissan was covered at the time of the accident as a "newly acquired auto" under their liability insurance policies issued by Shelter. The policies for both the Explorer and the Safari had the following provision:

The insurance provided by this policy with respect to the described auto applies to any other auto of which you acquire ownership if it:

(1) Replaces the described auto; or

(2) Is an additional auto *and we insure all autos owned in whole or in part by you on the date of such acquisition.*

You must notify us while this policy is in force and within 30 days after the date of such acquisition of your election to make the insurance provided by this policy applicable to such auto. The insurance on the newly acquired auto does not apply to any loss against which you have collectible insurance. You will pay any additional premium required for the insurance on the newly acquired auto.

(emphasis added).

All parties concur that, because the Nissan did not replace either the Explorer or the Safari, it is not covered as a "replacement auto". The parties also agree that, if literally interpreted and applied, the Nissan is not covered under the "additional auto" provision of the policy since the Ford Explorer owned by the Magruders at the time of the accident was not insured with Shelter on the date the Magruders acquired the Nissan. Moreover, although the Magruders did reinstate their Shelter insurance on the Ford Explorer on May 15, 1996, they did so effective on that date, rather than retroactively to April 24, 1996, the day after their prior coverage had lapsed. Thus, they failed to meet the requirement of the Shelter policy that all of their autos be insured with Shelter in order to invoke the newly acquired auto provision, because they did not have coverage for their Explorer with Shelter on April 26, 1996, when they acquired the Nissan.

The Magruders nonetheless argue that they are entitled to coverage because the condition contained in Shelter's policy, stating that newly acquired automobiles will be covered only if all automobiles owned by the insured are insured with Shelter, is unenforceable as against public policy. More specifically, they allege that it is inconsistent with the policy of Missouri as expressed in 20 C.S.R. § 500–2.100(F). The latter provision, which is contained in a regulation dealing with a variety of requirements imposed on insurers who provide a variety of types of coverage, states:

Newly acquired and replacement automobile coverage provisions shall provide not fewer than thirty (30) days within which to advise the company of the acquisition.

The Magruders admit that this provision does not expressly require an insurer to provide coverage for all newly acquired automobiles. They also admit that such a requirement is not expressly set out in the Financial Responsibility Law, Section 303.010 *et. seq.* They argue, however, that it would make no sense for the regulatory authorities to require that coverage for newly acquired and replacement automobiles must give the insured 30 days to advise the insurer of the new acquisition, unless the regulators also intended that every policy must provide coverage for all newly acquired automobiles.

We disagree. First, the Magruders cite us to no precedent which would allow us to infer the existence of mandatory coverage from a regulation which does not expressly require it, which purports to regulate only the time period for giving notice of a new or replacement purchase, and which was issued pursu-

ant to a statute which also does not expressly require such coverage.

Second, contrary to the Magruders' arguments, there is nothing nonsensical or unusual about the Department of Insurance drafting regulations which contain requirements for the terms which an insurer must include if it makes a particular type of coverage available, even though Missouri law does not mandate that the insurer must make that particular type of coverage available.

To the contrary, other sections of the very regulation on which the Magruders rely also take this approach. That regulation, issued by the Missouri Department of Insurance, is entitled "20 CSR 500–2.1—Minimum Standards for Automobile Policies." Subsection (2)(C) states that medical payment coverage cannot be excess over certain other insurance unless this is clearly disclosed in a specified manner on the declarations page and elsewhere. Subsection (2)(D) states that physical damage coverage may not exclude certain types of factory-installed equipment. These two subsections thus set forth requirements which must be met by policies which give medical payment coverage and physical damage coverage. Yet, neither this nor other regulations make medical payment coverage or physical damage coverage mandatory in every policy issued in Missouri. Rather, Missouri public policy, as stated in the Motor Vehicle Financial Responsibility Law, Sections 303.010 *et seq*, only requires that every vehicle be insured for liability of at least $25,000 per person and $50,000 per incident. The fact that medical payment and physical damage coverage are not mandatory does not mean that the Department of Insurance cannot regulate them, however. It can, and has, in 20 C.S.R. 500–2.1(2)(C) and (D).

Similarly, just because Subsection (2)(F) of 20 C.S.R. 500–2.1 sets forth requirements for the length of the grace period which must be granted in policies which have a grace period for newly acquired automobiles, does not require us to conclude that it is mandatory that all policies issued in Missouri must give poli-

cyholders an unconditional grace period. The Department of Insurance can regulate the length of such a grace period without requiring that all policies grant all insureds an unconditional grace period for all newly acquired automobiles.

■ The Magruders nonetheless argue that the principles underlying the Motor Vehicle Financial Responsibility Act do require mandatory coverage of newly acquired vehicles. A similar argument was rejected in *Lawson v. Traders Ins.*, 946 S.W.2d 298 (Mo. App.1997). In that case, plaintiff acquired a new auto because his covered auto was inoperable, but failed to give notice to his insurer about the new auto. After the 30–day grace period in his policy expired, plaintiff was involved in an accident with the new auto and the insurer denied coverage. On appeal, the court rejected plaintiff's argument that the exclusion of the new auto violated Missouri public policy as expressed in the Motor Vehicle Financial Responsibility Law, stating, "if the [Motor Vehicle Financial Responsibility Law] does not require liability insurance coverage for a particular situation, a policy provision excluding that coverage is not invalid," *Id.* at 301, *citing* § 303.190.2 RSMo 1994.[1] The same reasoning applies here.

Moreover, we reject the Magruders' argument that there is no valid basis for limiting newly acquired automobile coverage to situations in which all automobiles are insured with the insurer in question. To the contrary, as Shelter notes, the provision is aimed at preventing double recovery by the insured, and at preventing the insurer from being held responsible for an accident involving a vehicle for which the insured had no intention of purchasing insurance from that insurer.

While plaintiffs argue that this will mean that people may leave automobile showrooms without insurance, nothing prevents an insured from obtaining coverage from a particular company before leaving the car lot, and in fact, it would be difficult to obtain financing in the absence of such insurance.

---

1. *See also Farmers Ins. Co., Inc. v. State Farm Mut. Auto. Ins. Co.,* 613 S.W.2d 158 (Mo.App. 1981) (policy language limiting coverage for new additional auto to those situations when compa-

ny insured all owned autos was enforced and precluded coverage for new auto which was not solely owned by named insured).

Moreover, as defendant notes, nothing in the Motor Vehicle Financial Responsibility Law requires insurers to provide coverage to persons purchasing their first car; there is no greater reason why such a requirement should be imposed on insurers for persons who are purchasing additional cars.

Perhaps for this reason, nearly every state recognizes and enforces similar provisions stating that coverage for non-replacement autos is limited to those situations in which the insured has all owned autos covered through the same company. *See* Annotation, *Construction and Application of "Automatic Insurance" or "Newly Acquired Vehicle" Clause ("Replacement," and "Blanket," or "Fleet" Provisions) Contained in Automobile Liability Policy,* 39 A.L.R.4th 229, 239, 252–365, 1985 WL 287375 (1985) (stating that such provisions are "universally recognized by the courts"). Accord, Appleman, Insurance Law and Practice § 2376 (1981). For example, in *Key v. Allstate Ins. Co.,* 90 F.3d 1546 (11th Cir.1996), the Eleventh Circuit found a similar "insure all autos" exclusion to be unambiguous and in accord with the public policy rationale which aims at preventing requirements which cause insurers to provide coverage under circumstances which would lead to double recovery.

We find this same rationale applies here. Nothing in Missouri statutory or regulatory law or public policy required Shelter to provide the Magruders with a 30-day grace period in which to obtain insurance. While the Shelter policy did provide such a grace period if the insured had all cars insured with it at the time the new vehicle was purchased, the Magruders did not meet this condition since their Ford Explorer was not insured at all at the time they purchased the Nissan. They therefore are not entitled to coverage for the accident under the policy.

## IV. SHELTER IS NOT ESTOPPED TO DENY COVERAGE

■ Finally, the Magruders argue that, even if they are not covered under the newly acquired auto provision, Shelter is estopped from denying coverage because: (1) Shelter was silent when it gave notice regarding their acquisition of the Nissan and did not tell them that the auto did not qualify for the automatic 30–day coverage; (2) Shelter had a history of accepting late premium payments and back-dating coverage; and (3) Shelter told them after the accident that the matter would be taken care of if they paid the premium for the Nissan.

■ As Shelter notes, however, the doctrines of waiver and estoppel may not be employed to create coverage where it otherwise does not exist. *Shelter General Ins. v. Siegler,* 945 S.W.2d 24, 27 (Mo.App.1997). Here, there is no coverage for the Nissan under the newly acquired auto provision because not all of the Magruders' owned autos were insured through Shelter at the time they acquired the Nissan. Therefore, Shelter cannot be estopped from denying coverage.

■ Even more basically, the Magruders have failed to allege the prerequisites for estoppel. That doctrine requires plaintiffs to prove: (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate the admission, statement or act. *Brown v. State Farm Mut. Auto. Ins. Co.,* 776 S.W.2d 384 (Mo. banc 1989). Here, there is nothing in the facts to show that the Magruders relied on Shelter's silence regarding the automatic 30–day coverage in deciding not to obtain coverage when they visited their agent on May 15, 1996. To the contrary, they affirmatively told their agent they did not want to pay for coverage while they were out of town and would obtain coverage for the Nissan beginning on their return. They certainly could not have relied on Shelter's acceptance of a premium payment for the Nissan after the accident, since this did not occur until after the 30–day period had expired. In addition, while the Magruders allege that Shelter had a history of accepting late payments for coverage of their existing automobiles, the evidence does not show that they ever accepted late payments for coverage of a newly purchased automobile. Moreover, in this case, even when the Magruders did reinstate cov-

erage on the Explorer after it had lapsed, they did so only effective on the day of their visit; that coverage was not back-dated to the date the prior coverage had expired.

For all of these reasons, we affirm.

Chief Judge PATRICIA BRECKENRIDGE, Presiding, and Judge JAMES M. SMART, concur.

