UNITED STATES FIDELITY & GUARANTY CO., a Corporation, Plaintiff-Respondent,

v.

SAFECO INSURANCE COMPANY OF AMERICA, a Corporation, Defendant, Cross-Claimant, Cross-Defendant, Appellant,

and

Robert Allan Alonzo and Joseph C. Alonzo, Defendants, Cross-Defendants, Cross-Claimants, Respondents.

No. 38007.

Missouri Court of Appeals, St. Louis District, Division 2.

Aug. 9, 1977.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Daniel T. Rabbitt, J. C. Jaeckel, St. Louis, for defendant, cross-claimant, cross-defendant, appellant.

Friedman, Weitzman & Friedman, C. Marshall Friedman, St. Louis, for defendants, cross-defendants, cross-claimants, respondents.

Barnard & Baer, George E. Lee, Doris J. Banta, St. Louis, for plaintiff-respondent.

McMILLIAN, Presiding Judge.

Defendant, Safeco Insurance Company of America (Safeco) appeals from a judgment entered by the Circuit Court of City of St. Louis in a supplemental proceeding after a declaratory judgment. The supplemental judgment declared Safeco liable for the interest on judgments collected by Robert Alonzo and his father, Joseph Alonzo.

On January 16, 1970, four teenagers were involved in a one car accident when the driver, Roy Chapman, ran off the road and hit a tree. The car he was driving belonged to Mrs. Dorothy Kloepper but was used primarily by her daughter, Jane, who was a passenger at the time of the accident. The other two passengers, Deborah Norman and Robert Alonzo, were the only ones seriously injured.

Plaintiff, United States Fidelity and Guaranty Company (USFG) insured the automobile involved, and its policy provided coverage of $25,000 for injury to one person and $50,000 for each occurrence. Safeco insured an automobile owned by the father of Roy Chapman, and its policy provided coverage, in connection with the operation of a non-owned automobile by one insured under its policy when such operation "is with permission, or reasonably believed to be with the permission of the owner, and within the scope of such permission."

On August 7, 1970, USFG, as plaintiff, filed a declaratory judgment, naming as defendants, Safeco, Robert and Joseph Alonzo, Deborah Norman, Roy Chapman, Dorothy Kloepper, and later, by amendment Dorothy Kloepper's daughter, Jane Kloepper. The declaratory judgment suit sought a determination as to which of the two liability insurers owed what under the om-

nibus clause coverage in USFG's policy and the non-owned automobile clause coverage in Safeco's policy.

Before the Missouri Supreme Court handed down a definitive decision in the declaratory suit, the Alonzos and Deborah Norman, in separate suits, had been awarded judgments against Roy Chapman totalling $151,000—Robert Alonzo, $87,500; Joseph Alonzo, $18,500; and Deborah Norman, $45,000.

While the declaratory suit was pending, the Alonzos' action against Roy Chapman was in progress. During the damage suit, the Alonzos entered into two agreements with the other parties. On June 9, 1971, they agreed not to pursue Roy Chapman's personal assets to satisfy any judgments they might recover, but to seek relief from the two insurance companies only. In return Roy Chapman admitted liability for the purposes of the trial. On June 10, 1971, at the close of the plaintiff's evidence, the Alonzos orally agreed to release Jane and Dorothy Kloepper and USFG from all claims arising from the January 16, 1970, accident upon payment by USFG of $12,-500. As can be seen,[1] the Alonzos also agreed to release USFG from any liability it may have for any judgments entered against Roy Chapman. This agreement was not executed until September 7, 1971.

As a result of the above agreement, a directed verdict was entered in favor of Jane Kloepper. The case against Roy Chapman was submitted to the jury and verdicts of $100,000 for Robert Alonzo and $25,000 for Joseph Alonzo were returned. These were reduced by remittitur to $87,500 and $18,500 respectively, so as to conform to the prayer in the petition.

On September 7, 1971, three months after the Alonzos recovered the above verdicts, the declaratory judgment suit came to trial. Safeco, joined as a defendant, cross claimed for a judgment that its coverage did not extend to Roy Chapman. The Alonzos, also defendants, cross claimed against Safeco seeking an order that Safeco pay $52,000 ($50,000 policy limit and $2,000 medical) on the judgment collected in the previous trial.[2] The trial court held that Chapman was covered under both policies and ordered Safeco to pay the Alonzos $52,000 as well as interest of 6% on Robert Alonzo's judgment of $87,500 and 6% on Joseph Alonzo's judgment of $18,500 from June 24, 1971 until Safeco paid its full liability to the parties.[3]

On appeal and reassignment from this court, the Missouri Supreme Court partially

1. Second Party (Joseph Alonzo) on behalf of himself individually and as guardian of the estate of Robert Allan Alonzo, his son, does hereby release and forever discharge the United States Fidelity & Guaranty Company, Dorothy Kloepper and Jane Kloepper from any and all claims, damages, demands, actions, causes of action, or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done, by anyone prior to and including the date hereof on account of all injuries, both to person or property, resulting or to result, to Second Party, and said Robert Allan Alonzo, from the said accident of January 16, 1970.

"In further consideration of the aforesaid payments, Second Party on behalf of himself and his said minor son, *agrees that First Party (USFG) is further released and forever discharged from any liability it may now have or later become determined to have in said declaratory judgment action,* aforesaid, and for or on account of the judgments entered against Roy Chapman in Cause No. 13643–F, aforesaid, in favor of Second Party and his minor son Robert and Second Party does hereby agree to indemnify and hold harmless First Party against any

liability and expense for payment of any part of said judgment for any reason." (Emphasis added.)

2. In the Alonzo's cross-complaint they also requested the court enter a judgment against Safeco and in their favor for the total sums of the two judgments plus interest because of Safeco's wrongful conduct in refusing to assume the defense of this action and in refusing to settle. The trial court declined to enter this order and entered judgment against Safeco for $52,000 only.

3. It appears to us that the trial court did not declare the rights of all parties as requested by USFG in its petition. While it determined that Roy Chapman was covered by both the USFG and Safeco policies it failed to declare what the effect of the settlement agreement was on the Alonzo's ability to recover anything from USFG beyond the $12,500 settled for. It also failed to declare whether Deborah Norman could recover from USFG to satisfy her $45,000 judgment against Roy Chapman. The Supreme Court also failed to rule on these issues.

affirmed, ruling that USFG was primarily liable for Roy Chapman, as insurer of the car, while Safeco as insurer for the driver, was the excess carrier. *USF&G v. Safeco Ins. Co.*, 522 S.W.2d 809, 816 (Mo. banc 1975). It reversed the award of $52,000 to the Alonzos because it did not take into consideration the Norman judgment nor as to how the judgments totalling $151,000 ($87,500 for Robert Alonzo, $18,500 for Joseph Alonzo, $45,000 for Deborah Norman nee Fanin) were to be apportioned from the total coverage of $100,000 and $2,000 medical payments.[4] The court omitted any reference to the trial court's ruling on the interest payable by Safeco.

After the remand of the declaratory judgment proceeding by the Supreme Court, the parties agreed among themselves that the Alonzos would receive $41,800 of the Safeco policy and Deborah Norman would receive $8,200. In addition, the trial court declared that for the purposes of computing the interest, the Alonzo judgments would be reduced by $12,500, the amount already received from USFG as settlement. Therefore, Safeco owed $2,188.10 as interest on the $18,500 judgment in favor of Joseph Alonzo (reduced to $8,500 for purposes of interest) and $21,881.09 as interest on the $87,500 judgment in favor of Robert Alonzo (reduced to $85,000 for the purposes of interest). Costs were to be paid equally by

4. We believe some clarification of this holding is in order. Apparently the Supreme Court arrived at the $102,000 total coverage figure as follows: $50,000-policy limit of USFG; $50,000-policy limit of Safeco; $2,000-medical payments recovered by Robert Alonzo under Safeco's policy; $102,000-total.

The problem with the above calculation is that the full $50,000 of USFG's policy is not available and so, total coverage is not $102,000.

True, at first glance it would seem that the full limit of USFG's policy ($50,000) is available. USFG's policy provides maximum coverage of $50,000 per occurrence and $25,000 per person and there were two injured persons (Deborah Norman and Robert Alonzo), each with judgments exceeding $25,000. Therefore, it would seem that if each collected their share, $25,000, USFG's policy limit of $50,000 would be exhausted.

The Alonzos will not be able, however, to collect the $25,000 due to them under USFG's policy because they settled all of their claims with USFG for $12,500 as set out in Exhibit U (see footnote 1). In this settlement, the Alonzos released Dorothy and Jane Kloepper and USFG from liability for the Kloeppers and USFG for any liability it may have for judgments collected by the Alonzos against Roy Chapman. Therefore, USFG is not liable to the Alonzos beyond the $12,500 agreed upon for the judgments collected against Chapman.

It appears that the Supreme Court was not aware of that part of the settlement which released USFG from liability to the Alonzos for judgments rendered against Chapman. Exhibit U (the settlement agreement) was missing from the file received by this court and if it was similarly missing from the file given to the Supreme Court, it is very likely that the court was only aware of that part of the agreement which released Jane Kloepper from liability for this was the only aspect of the settlement discussed in the transcript. The following language of the court indicates that it believed this

agreement was only concerned with Jane Kloepper's liability: "[A] settlement was made by USFG whereby upon payment of $12,500, a motion for directed verdict was sustained in favor of Jane Kloepper . . . The record does not disclose whether anyone else, either person or corporation, was also released as part of the $12,500 settlement." 522 S.W.2d at 821.

Therefore, if, as the above language indicates, the Supreme Court was unaware of that part of the settlement which released USFG from liability for judgments against Roy Chapman recovered by the Alonzos, it would assume that the Alonzos could recover the remaining $12,500 of the USFG $25,000 policy limit to satisfy their judgments against Chapman.

We have no evidence indicating otherwise and therefore assume that Deborah Norman is able to collect $25,000 from USFG to partially satisfy the $45,000 judgment she recovered against Roy Chapman. Her right to recover from USFG was not affected by the settlement made by the Alonzos. In addition, we assume that this was the reason USFG continued to litigate the issue of whether its coverage extended to Chapman after it had settled such liability with the Alonzos.

In summary, we believe the total coverage available to the injured parties is $89,500 rather than $102,000: $25,000-amount Deborah Norman nee Fanin is able to collect from USFG to partially satisfy her $45,000 judgment; $12,500-amount the Alonzos recovered from USFG pursuant to their settlement; $50,000-amount of Safeco's policy limit which was eventually paid into the court and divided between the Alonzos and Deborah Norman nee Fanin; $2,000-amount of medical payments recovered by Robert Alonzo under Safeco policy; $89,500-total coverage available to the injured parties.

USFG and Safeco. Safeco appeals this order on the interest issue.

For reversal, Safeco urges that: (1) as excess carrier it is not liable for any interest until USFG, the primary insurer, has paid its full policy limits; (2) the settlement agreement (Exhibit U) is not for consideration because it was not pleaded, and even if it is before the court for consideration it does not release USFG's liability to Chapman for the Alonzo judgments; (3) the Alonzos are not entitled to interest on their judgments from Safeco because they failed to look to USFG for payment of its policy obligations (which includes payment of interest) as they promised to do in the June 9, 1971 agreement with Chapman. Because Safeco is the equitable assignee or subrogee of Chapman, it can enforce the agreement the Alonzos made with Chapman to look to USFG for payment.

We find no merit in these allegations and affirm the trial court's ruling that Safeco is liable for the interest on the Alonzo judgments. However, Safeco is only to be held liable for the interest on that part of the Alonzo judgments which equals its policy limits, therefore, we reduce the amount of interest Safeco owes to $10,748.32, which is 6% of $41,800, the amount of the Safeco policy the Alonzos actually recovered. As the trial court stated, interest accumulated from June 24, 1971, when the judgment was rendered until October 7, 1975, when Safeco paid its policy limits into the court.

After seven years, three lawsuits, two trials and two appeals, we are eager to put this complex case to rest. Before us are judgments against Roy Chapman in favor of the Alonzos totalling $106,000[5] and two insurance companies whose coverage extends to Roy Chapman. Despite the fact its policy limit is $50,000 USFG is only liable for $12,500 of the judgments because of the settlement agreement made during trial. Safeco is only liable for $52,000 ($50,000 policy limit and $2,000 medical). Interest has accumulated on the judgments for approximately four and one-half years while the insurance company litigated their respective liabilities. Now, both companies deny liability for the interest.

■ Before we can deal with the interest issue we must confront Safeco's claim that the $12,500 settlement (Exhibit U) is not before us for consideration because it was not properly pleaded.

Neither of the parties have stated precisely at what point in this litigation the "settlement" was not properly pleaded but it appears that Safeco's argument is that USFG should have pleaded it between June and September, 1970, when the declaratory judgment action was initiated. Safeco argues that this settlement agreement is a release, which as an affirmative defense, *Winter v. Elder*, 492 S.W.2d 146, 148 (Mo. App.1973), must be pleaded, § 55.08 RSMo, V.A.M.R. (1976), and because USFG did not plead it, it cannot be considered. However, § 55.08 applies only when a party is "pleading to a preceding pleading." USFG was the plaintiff in this declaratory judgment action and because it initiated the pleadings it never had a "preceding pleading" to respond to. Although Safeco cross-claimed against the other defendants it never counterclaimed against USFG so that USFG would have a "preceding pleading." Therefore § 55.08 does not apply.

■ Safeco's next argument is that the settlement was only concerned with Jane Kloepper's liability and can not release USFG from liability for Chapman as well. According to Safeco, Chapman's rights cannot compromise this agreement because he was not a party to it. This might be a persuasive argument if by securing this release, USFG left Roy Chapman open for personal liability for the judgments rendered against him. But, however, the Alonzos had already agreed not to hold Chapman personally responsible, and thus Chapman's position was not affected by this agreement. We will not speculate as to why the Alonzos settled with USFG as to Jane Kloepper's negligence rather than submitting this question to the jury, nor as to why they further agreed to release USFG from liability for Chapman. But, for whatever reasons, the Alonzos have the right to

---

5. $106,000 ($87,500, Robert Alonzo; and $18,500, Joseph Alonzo).

settle their claims as they believe best, as long as they do not purport to give away rights of a third person who is not a party to the agreement. And, as we have pointed out they have not given away Chapman's rights by this agreement. Again, we will not speculate as to why the Alonzos agreed to this further condition in the settlement.

Safeco further argues that because USFG continued to deny liability for Chapman for three years after the settlement was executed, it admitted said settlement did not release it from liability for Chapman. We assume, however, that USFG took this position because it was still potentially liable for judgments against Chapman secured by Deborah Norman. We have no evidence indicating that Deborah Norman, like the Alonzos, released USFG from liability for Chapman. As will become apparent, this settlement agreement is crucial as we confront the major issue in this case: Which insurance company is liable for the interest on the Alonzo judgments.

Basically, Safeco maintains that as excess carrier, it has no liability for the interest until USFG, the primary carrier, has discharged its responsibilities by paying the full policy limit. According to Safeco, only payment and not settlement, can discharge a carrier's liability. USFG argues that its liability was exhausted by the settlement and that Safeco as excess carrier became liable to pay the interest under its supplementary policy provision which states: "Safeco . . . agrees . . . [t]o pay, in addition to the applicable limits of liability . . . interest accruing after entry of judgment in any such suit . . . ."

■ Safeco, as excess carrier, is liable only when the primary insurer's (USFG) liability has been exhausted. Therefore, our first question is—Was USFG's liability exhausted by settlement or can it only be exhausted by payment of its full coverage as Safeco argues? This court, in *Handleman v. USF&G Co.,* 223 Mo.App. 758, 18 S.W.2d 532 (1929), while emphasizing that exhaustion of the primary insurance was a necessary condition precedent to liability under the excess policy, clearly held that "Such condition is complied with when the insured proves that claims aggregating the full amount of the specific policy have been settled thereunder and full liability of the insurer discharged." Based on this precedent, we hold that USFG's liability was exhausted by the settlement with the Alonzos' and Safeco's liability as the excess carrier arose.

■ Having determined that Safeco is liable, we must decide whether Safeco is responsible for the interest on the entire judgment or only for the interest on that part of the judgment which equals its policy limit. Safeco's policy provides:

"SAFECO . . . [a]grees with the insured . . . [t]o pay, in addition to the applicable limits of liability:

(d) interest accruing after entry of judgment in any such suit until SAFECO has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of SAFECO's liability thereon; . . . ."

Whether this obligates it to pay interest on the full judgment or only on that part of the judgment which equals its policy limit is an unresolved issue in the law. 76 A.L.R.2d 983. While the trend appears to be in favor of finding liability for the interest on the entire judgment, *Stamps v. Consolidated Underwriters,* 208 Kan. 630, 493 P.2d 246, 249 (1972); *Germer v. Public Svc. Mut. Ins. Co.,* 99 N.J.Super. 137, 238 A.2d 713 (1967); 8 Appleman, Insurance Law & Practice, § 4899 at 361 (1962 rev.), we believe the major reason supporting this position is inapplicable to the case at bar.

Most commentators and courts justify imposing liability for interest on an entire judgment because to obtain automobile insurance coverage an individual must give the insurer the right to control the litigation. If the insurer prolongs the litigation by appeals or other delaying actions, he causes the interest to accumulate not only on that part of the judgment which is within its policy limits and for which it is responsible, but also on that part of the judgment for which the insured may be personally liable. As a result of controlling the litigation and causing the insured to incur greater personal liability, the insurer should

bear the full cost of the delay, i. e., the entire interest. *River Valley Cartage Co. v. Hawkeye-Security Ins. Co.,* 17 Ill.2d 242, 161 N.E.2d 101 (1959); *Wilkerson v. Maryland Cas. Co.,* 119 F.Supp. 383 (E.D.Va. 1953); 8 Appleman, Insurance Law & Practice, § 4899 at 364.

Because the Supreme Court in USFG, supra, at 822, found SAFECO not guilty of bad faith in failing to settle and defend, we hold Safeco is not liable for the entire cost of delaying the litigation because USFG was equally responsible for the delay. USFG initially brought the declaratory judgment that it was not liable for Chapman and it, along with Safeco and Deborah Norman, appealed that ruling to this court, which resulted in a transfer to the Supreme Court and a delay of four years. Moreover, because of the agreement between the Alonzos and Chapman, the "insured", i. e., Chapman, in this case will not be personally liable for any part of the judgment or interest thereon. Therefore the dilatory actions by the insurers have not resulted in an unfair and uninvited liability to the "insured."

In addition, the language in Safeco's policy less readily lends itself to the interpretation that Safeco is liable for interest on the entire judgment, especially when compared with the language in policies where this liability was found. Safeco's policy states: "Safeco . . . [a]grees . . . [t]o pay, in addition to the applicable limits of liability . . . interest accruing after entry of judgment in any such suit. . . . ." In all cases where it was held that the insurer was liable for interest on that part of the judgment which exceeded its policy limits, the policy stated that the insurer agreed to pay "*all interest* accruing. . . . ." (Emphasis added.) *River Valley Cartage Co. v. Hawkeye-Security Ins. Co.,* supra; *Highway Cas. Co. v. Johnston,* 104 So.2d 734 (Fla.1958); *Germer v. Public Svc. Mut. Ins. Co.,* supra.

For these reasons we find it more equitable and appropriate to hold that Safeco is only liable for the interest on $41,800, the amount actually collected from Safeco by the Alonzos, rather than on $93,500, the amount on which the trial court determined

Safeco should pay interest, its policy limit. At a rate of 6%, from June 24, 1971 (judgment was rendered) to October 7, 1975 (Safeco paid its policy limits into the registry of the court) this would be $10,859.64.

Although USFG is only liable for $12,500 of the Alonzo judgments against Roy Chapman, the question remains whether it should be liable for interest on these judgments at least up to its policy limit. We believe this issue is also resolved by that part of the $12,500 settlement entered into by the Alonzos and USFG which states, e. g., "Second Party (the Alonzos) . . . agrees that First Party is further released and forever discharged from any liability it may now have or later become determined to have . . . for or on account of the judgments entered against Roy Chapman . . . and Second Party does hereby agree to indemnify and hold harmless First Party against any liability and expense for payment of any part of said judgment *for any reason.*" (Emphasis added.) Clearly, this agreement releases USFG from all liability whatsoever, whether for the judgment itself or for any interest on the judgment.

We must next address Safeco's contention that the Alonzos cannot collect interest from Safeco because the Alonzos failed to look to USFG for payment of its policy obligations, which includes payment of interest, as they promised to do in the June 9, 1971, agreement with Chapman. Because Safeco is the equitable assignee or subrogee of Chapman, it can enforce this agreement on behalf of Chapman. This argument is easily disposed of. The contract between the Alonzos and Chapman in which Chapman agreed to admit liability for the accident and the Alonzos agreed to look to Safeco and USFG for satisfaction of judgments obtained was made and entered into June 9, 1971. The $12,500 settlement in which the Alonzos released USFG for liability for the Kloeppers and Chapman was orally agreed to on June 10, 1971, and executed on September 7, 1971. Thus, in the second agreement, the Alonzos did just what they promised to do in the first; they looked to USFG for relief but decided to settle rather than attempt to recover a

judgment after suit. Therefore, the Alonzos have not abandoned the agreement they made on June 9, 1971 and Safeco's attempt to prove they have is pointless.

In conclusion, we reverse the trial court's order to Safeco to pay interest on the entire amount of the judgments collected by the Alonzos and substitute an order that Safeco pay interest on $41,800 of the judgments. As computed earlier this is equal to $10,-748.32.

Accordingly, judgment is reversed with directions.

STEWART and REINHARD, JJ., concur.

