Chris MILLER and Teresa Miller,
Appellants/Cross–
Respondents,

v.

SECURA INSURANCE AND MUTUAL COMPANY OF WISCONSIN,
Respondent/Cross–Appellant.

Nos. WD 58554, WD 58606.

Missouri Court of Appeals,
Western District.

June 5, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 2001.

Application for Transfer Denied
Sept. 25, 2001.

Christopher Paul Sweeny, Kansas City, for Appellant.

Tim Mudd, Kansas City, for Respondent.

PAUL M. SPINDEN, Chief Judge.

Ronald Berry was involved in an automobile accident which injured his passenger, Chris Miller, and resulted in Miller's leg being amputated. Miller and his wife, Teresa, sued Berry, and the circuit court awarded $750,000 to Miller and $75,000 to Teresa Miller. The court also awarded $165,380.46 in prejudgment interest to the Millers. The Millers sued Secura Insurance and Mutual Company of Wisconsin for equitable garnishment on the ground that Berry was covered by Secura's automobile insurance policy issued to Berry's father, Donald Berry.

In the equitable garnishment action, the circuit court determined that Berry resided in his father's household and, as Donald Berry's relative, was covered by Secura's policy. The circuit court ordered Secura to pay the Millers the $25,000 personal injury policy limits of the policy and post-judgment interest, but only on the portion of the judgment that did not exceed the $25,000 policy limit. The Millers and Secura appeal.

The Millers assert that the circuit court erred in restricting post-judgment interest to only the part of the judgment that did not exceed the $25,000 policy limits. They contend that they should have received post-judgment interest on the entire damage award. Secura counters that, because

it did not defend Berry in the underlying personal injury action, it was not obligated under its policy's provisions to pay any post-judgment interest, so the circuit court erred in awarding any post-judgment interest.

▆▆▆ The circuit court found that Berry was an insured under Secura's policy. Consequently, under the terms of the policy, Secura was obligated to provide a defense for him in the underlying lawsuit. Secura's failure to provide a defense was, therefore, a breach of its contract with Berry's father. As this court held in *Whitehead v. Lakeside Hospital Association,* 844 S.W.2d 475, 481 (Mo.App.1992):

> The decision by the insurer, as to whether it will refuse to defend because the claim upon which the action against the insured grounded is outside the coverage of the policy, is attended with risk. Where the claim is actually outside the policy coverage, the refusal of the insurer to defend is a justified refusal, the insurer is not guilty of a breach of contract and incurs no legal liability by its action. . . .

> Where the claim comes within the policy coverage, and so within the duty of the insurer to defend, the refusal of the insurer to do so is unjustified, and the insurer is guilty of a breach of contract. . . . That the refusal of the insurer to defend on the ground that the claim is outside the policy is an honest mistake, nevertheless constitutes an unjustified refusal and renders the insurer liable to the insured for all resultant damages from that breach of contract.

Secura contends, however, that it was not obligated to pay any post-judgment interest because of language in its policy. The policy purports to limit its interest obligation to cases it defends. Secura, in essence, seeks to be rewarded for its breach.

In regard to post-judgment interest, Secura's policy said, "We will pay in addition to our Limit of Liability . . . [i]nterest on damages awarded in a suit we defend accruing after judgment is entered and before we have paid, offered to pay or deposited in court that portion of the judgment which is not more than our Limit of Liability." Had Secura provided a defense for Berry, as it was obligated to do, Secura would have been liable for post-judgment interest. The effect of Secura's argument is that it put itself in a better position by breaching its contract than had it not breached. This is untenable.

▆▆▆ By breaching a contract by refusing to provide a defense to an insured under the policy, an insurance company is liable to its insured for "any judgment recovered against [the insured] up to the limits of the policy plus attorney fees, costs, interest and any other expenses incurred by the insured in conducting the defense of the suit which it was the obligation of the company to perform under its contract." *Landie v. Century Indemnity Company,* 390 S.W.2d 558, 562 (Mo.App. 1965). Because of its breach of contract, Secura was obligated to pay post-judgment interest.

▆▆▆ Secura contends that Missouri law has long recognized that an insurance company's liability for post-judgment interest under an automobile liability insurance policy is to be determined by the written terms of the insurance contract. *Levin v. State Farm Mutual Automobile Insurance Company,* 510 S.W.2d 455, 461 (Mo. banc 1974). We agree with the general proposition, but the *Levin* case did not concern a breach of the insurance contract by refusing to defend. The terms of an insurance policy will determine whether an insurer is liable for post-judgment interest, but an insurer will not be rewarded for its breach

by being put in a better position than had it not breached. *Landie,* 390 S.W.2d at 565.

■ Had Secura defended Ronald Berry as its policy required it to do, Secura would have been obligated to pay post-judgment interest. Because of its breach, Secura is liable for post-judgment interest.[1]

Secura also asserts that, by allowing for recovery of post-judgment interest in this case, we would, in effect, be rewriting the insurance contract's plain language and allowing for coverage where none existed before. We disagree. The policy's language, that Secura would pay "in addition to our Limit of Liability ... [i]nterest on damages awarded in a suit we defend," assumed that Secura would not breach its contract. Had Secura defended Berry as its policy required it to do, Secura would have been obligated to pay post-judgment interest. Hence, our holding does not rewrite the insurance contract's plain language.

■ The question becomes: For how much interest is Secura liable. The Millers assert that Secura owes post-judgment interest on the entire damage award. Secura contends that, if it owes any post-judgment interest, it owes interest only on that part of the judgment which does not exceed it policy limits of $25,000. The answer is provided by the terms of the policy.

The policy says, "We will pay in addition to our Limit of Liability ... [i]nterest on damages awarded in a suit we defend accruing after judgment is entered and before we have paid, offered to pay or deposited in court that portion of the judgment which is not more than our Limit of Liability." This provision does not limit the award of interest to interest on that part of the damages which do not exceed the policy limits. It provides that Secura will pay interest on damages awarded in a suit that it defends—or should have defended.

Secura points to the portion of the provision that says "that portion of the judgment which is not more than our Limit of Liability." It contends that this limits the

1. Secura relies on McCandless v. United S. Assurance Co., 191 Ariz. 167, 953 P.2d 911 (App.1997), in support of its contention that an insurer is not liable for post-judgment interest on any amounts in excess of it liability limits if the policy conditions post-judgment interest on whether a defense was provided by the insurer in the underlying lawsuit. The Arizona court found that the interest clause provided that "full judgment interest will be paid only in suits in which [the insurer] assumes the defense." *Id.* at 920. The court reasoned, "The purpose of the clause is to protect the insured when the insurer assumes the defense of a matter and therefore controls the timing of payment of any judgment which is entered against the insured. If the insurer delays payment on the judgment, for example by taking an appeal, it must pay for this delay by assuming responsibility for interest on the entire amount of the judgment, even though it exceeds policy limits. Conversely, if the insurer has forfeited its right to control by not

defending, it is relieved of its interest obligation to the extent the judgment exceeds the insurer's basic amount of obligation under the policy, namely the policy limits." *Id.* The court, however, specifically noted that it was not addressing whether the insurer breached its duty under the policy to defend its insureds and whether such breach would make the insurer liable for interest. *Id.* The court found that the issue was not litigated or decided in the trial court; therefore, the issue was not before the court. *Id.* In *McCandless,* the court noted that, for reasons that did not appear in the record, the insureds did not tender the defense of the underlying action to the insurer, and the insurer did not provide a defense to the insureds. *Id.* In this case, the parties agreed that Secura did not provide a defense for Berry and that Secura denied coverage for Berry because he was not an insured under the policy and was not driving an insured vehicle.

amount of interest that it has to pay. This provision, however, relates to what Secura must pay, offer to pay, or deposit into court before post-judgment interest will stop accruing. To stop interest from accruing, Secura must pay "that portion of the judgment which is not more than [its] Limit of Liability." The provision has nothing to do with how post-judgment interest is calculated. Instead, it limits the duration of the liability for interest.

Secura could have limited its liability on post-judgment interest, but it did not. Secura knew how to limit the interest it would pay to interest calculated on its limit of liability as evidenced by the policy's provision for prejudgment interest. That provision says that Secura will pay "[p]re-judgment interest awarded against the insured person on that part of a judgment we pay." Had Secura intended to limit its post-judgment interest liability, it could have done so as it did with its prejudgment interest. Secura's failure to use limiting language in its post-judgment interest clause, as it did in its prejudgment interest clause, demonstrates that it did not intend to limit its liability for post-judgment interest.

Secura relies on *United States Fidelity and Guaranty Company v. Safeco Insurance Company of America*, 555 S.W.2d 848 (Mo.App.1977), to support its contention that it was liable for post-judgment interest only on the amount of the judgment that it had to pay—*i.e.* the $25,000 policy limits. In *Safeco Insurance*, the interest clause said that the insurer "[a]grees with the insured ... [t]o pay, in addition to the applicable limits of liability[,] ... interest accruing after entry of judgment in any such suit until [insurer] has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of [insurer's] liability thereon[.]" *Id.* at 853. The court found

that the insurer was not liable for interest on the entire judgment that exceeded the policy limits. *Id.* at 854. Unlike the language at issue here, the Safeco policy in no way provided for interest on the "damages awarded." Thus, the holding in *Safeco Insurance* is not applicable.

■ In its appeal, Secura asserts that the circuit court erred when it determined that Berry was an insured under the policy. Secura contends that the Millers offered no credible evidence at trial to establish by a preponderance of the evidence that he was residing in his father's household when the accident occurred. We disagree.

Berry was not a named insured on the insurance policy in question. The circuit court, however, found that Berry was a relative of the named insured, Donald Berry. The policy defined relative as "a person living in your household and related to you by blood[.]" The parties do not dispute that Berry is a relative of Donald Berry. The disputed issue is whether or not Berry lived in Donald Berry's household when the automobile accident occurred.

Secura admits that Berry's father, Donald Berry, and his brother, Darryl Berry, testified that Berry resided in Donald Berry's household when the accident occurred. It argues, however, that Donald Berry's and Darryl Berry's testimonies were "non-credible and unbelievable." Secura argues:

> While Secura recognizes that the appellate court traditionally is to give all deference to the trial court on the issue of determining the credibility of a witness' testimony, the circumstances surrounding the trial testimony of Donald Berry and Darryl Berry is of such a transparent and egregious nature that this appellate court should exercise its discretion to find that any testimony offered by

Donald Berry and Darryl Berry at trial suggesting that Ronald Berry was residing [in Donald Berry's household] as of November 3, 1990 is simply non-credible and unbelievable.

In particular, Secura asserts that, although Donald Berry and Darryl Berry attempted to testify at trial that Berry was residing in his father's household at the time of the accident, the record made it "abundantly clear that Donald Berry and Darryl Berry all the way up to trial had repeatedly and persistently represented to Secura that Ronald Berry was not residing [in his father's household] at the time of the accident." Secura contends that the evidence established that Berry lived with Linda Hall at the time of the accident. The circuit court, however, disagreed. The circuit court found:

> The evidence in this case showed that Ronald Berry, during the year or two prior to the accident, actually stayed a substantial number of nights at the residence of his then girlfriend, Linda Hall, but he also spent days and nights from time to time through that entire period in his father's home. A bedroom was maintained in his father's home for his use, he kept the bulk of his clothing there, taking only what he needed when he stayed over with his girlfriend. He kept both clothing and personal effects at his father's home where he also kept his sporting goods and his boat, and where he received his mail, bank statements and tax information. Ronald Berry's address as shown by his driver's license was at his father's home. He did his laundry there. He mowed grass and did yard work there. After he had surgery and was released from the hospital he returned to his parents' home for

care and recuperation. He did give his girlfriend money from time to time or bought food from time to time but the evidence did not establish that money was paid for a specific purpose such as rent or in a certain amount or at regular intervals or in any sense "due" at a certain time. Such payments were equally consistent with "gifts" as "rent." Under the evidence adduced, it is not substantially clear that Ronald Berry had abandoned his father's home as a residence even if a majority of the nights in the period next before the accident found him sleeping over at his girlfriend's home during the various periods they were on good terms. Other than physical presence, all official or semi-official indicia of an intent of domicile or residence tended to establish that Ronald Berry's residence was in the home of his father, Donald Berry.

> ... The court finds from the greater weight of the credible evidence that Ronald Berry was an insured person under the terms of the insurance policy at issue because he was a relative of the named insured and because he had not abandoned his previously established "residence" in the home of his parents on November 3, 1990, even though a majority of the nights immediately before the accident he may have spent sleeping over at his girlfriend's home.

Donald Berry admitted at trial that he signed a statement and an affidavit saying that Berry did not live in his household at the time of the accident. Donald Berry testified, however, that he lied in the statement and affidavit because he wanted to get back at Chris Miller for testifying against Berry in a criminal proceeding.[2] Darryl Berry testified at trial that Berry

---

**2.** Chris Miller was married to Donald Berry's daughter. They divorced, however, sometime before the trial of this case.

lived at Donald Berry's house 50 percent of the time and with Linda Hall the other 50 percent of the time. He said that Berry was staying with Linda Hall when the accident occurred. Donald and Darryl Berry testified at trial that Ronald Berry kept clothes and personal belongings at Donald Berry's house, that he received mail at the house, and that he lived at the house.

■ The policy does not define the phrase "living in your household." The term "live," however, has been found to be an "ambiguous, elastic and relative" term that is synonymous with "reside." *Clarkson v. MFA Mutual Insurance Company,* 413 S.W.2d 10, 13 (Mo.App.1967). "[A]n established residence is not lost by temporary absence therefrom, either on business or on pleasure, with no intention to abandon that residence or acquire another." *Id.* at 14.

■ Whether Berry lived in Donald Berry's household was a question of fact. *Id.* at 15. The circuit court found from the "greater weight of the credible evidence" that Berry lived in Donald Berry's household. In a judge-tried case, credibility of the witnesses and the weight to be given their testimony are matters for the judge to decide. *Superior Gearbox Company v. Edwards,* 869 S.W.2d 239, 244 (Mo.App. 1993). We will not substitute our judgment for the judge's on credibility issues in such cases. *Id.* We, therefore, defer to the judgment of the circuit court in respect to the credibility of Donald and Darryl Berry.

■ Secura also asserts that the circuit court erred when it ruled that Secura was estopped from asserting Berry's regular and frequent use of Linda Hall's truck as a defense at trial. We disagree.

■ The general rule is that " 'an insurer, having denied liability on a specified ground, may not thereafter deny liability on a different ground.' " *Brown v. State Farm Mutual Automobile Insurance Company,* 776 S.W.2d 384, 386 (Mo. banc 1989) (quoting *Stone v. Waters,* 483 S.W.2d 639, 645 (Mo.App.1972)). To invoke this rule, however, the insured must show that he or she was prejudiced—that is, that he or she relied to his or her "detriment on the assertion of the defense by preparation to meet that issue." *Brown,* 776 S.W.2d at 389 (quoting *Morris v. Travelers Insurance Company,* 546 S.W.2d 477, 487 (Mo. App.1976)).

Secura denied coverage on a specific ground: Berry was not a resident of Donald Berry's household. Despite Donald Berry's telling the insurance company that Linda Hall's vehicle was always available for Ronald Berry's use, Secura did not assert its "regular and frequent use" exclusion as a basis for denying coverage. Secura's policy excluded liability coverage for bodily injury or property damage resulting from the use of a vehicle—other than the "insured car"—which was available for the regular or frequent use by an insured.

In finding that Secura was estopped from raising the defense, the circuit court found:

> The court finds that defendant, having admittedly conducted extensive inquiries of plaintiff, defendant Ronald Berry and numerous others knowledgeable of the facts, knew or should have known of this defense to permit timely notice to plaintiffs and that this defense or exclusion was so lately asserted without notification to plaintiffs, the plaintiffs were prejudiced because they were not given an opportunity to investigate the defense prior to releasing their execution rights against defendant Berry and defendant Secura should be, and is, estopped to assert this exclusion.

Relying on Secura's asserted defense, the Millers investigated the claim and then entered into an agreement with Berry and

released their right to execute on any of Berry's assets. Not until after the Millers obtained a judgment against Berry and filed this garnishment action did Secura advise the Millers of its "regular and frequent use" defense. Consequently, the Millers were not given an opportunity to investigate this defense before releasing their execution rights against Berry and were thereby prejudiced. The circuit court did not err in concluding that Secura was estopped from asserting Berry's regular and frequent use of Linda Hall's truck as a defense at trial.

We, therefore reverse the circuit court's judgment regarding post-judgment interest and remand to it to calculate interest in accordance with this opinion. We affirm the circuit court's judgment concluding that Berry was an insured under the policy and that Secura was estopped from asserting the "regular and frequent use" policy exclusion at trial.

JAMES M. SMART, Presiding Judge, and PATRICIA BRECKENRIDGE, Judge, concur.