

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| MICHAEL WALSH,<br><br>                Appellant,<br><br>v.<br><br><br>STATE FARM MUTUAL<br>AUTOMOBILE INSURANCE<br>COMPANY,<br><br>             Respondent,<br><br>and<br><br>SHERYL CRAIG,<br><br>             Appellant. | **WD85260**<br>**(Consolidated with WD85285)**<br><br>**OPINION FILED:**<br>**January 17, 2023** |

**Appeal from the Circuit Court of Johnson County, Missouri**
**The Honorable William B. Collins, Judge**

**Before Division Four:** Gary D. Witt, Chief Judge,
Mark D. Pfeiffer, Judge, and John M. Torrence, Special Judge

Mr. Michael Walsh ("Walsh") and Ms. Sheryl Craig ("Craig") appeal from the Circuit Court of Johnson County, Missouri's ("trial court") entry of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm") relating to equitable garnishment proceedings seeking sums allegedly owed under an insurance policy issued by State Farm to Craig, its insured. We affirm.

**Factual and Procedural Background**[1]

On November 1, 2012, Craig was involved in a motor vehicle accident ("Accident") with Walsh. At the time of the Accident, Walsh was driving his motorcycle and Craig was operating a 1999 Honda Civic, VIN 2HGEJ6447XH110876 (the "Honda"). Craig was the named insured under State Farm automobile insurance policy number 6 6296-C07-25B (the "Policy") at the time of the Accident.[2] L.F. Doc. 40, 76.

The Policy defined the term "***You***" in relevant part to mean "the named insured or named insureds" shown on the Declarations Page. The Policy defined the term "***Your Car***" as "the vehicle shown under 'YOUR CAR' on the Declarations Page." The vehicle shown under "YOUR CAR" on the Declarations Page of the Policy was the Honda. The Policy defined the term "***Insured***" in pertinent part as "***you*** . . . for the ownership, maintenance, or use of ***your car***." The Policy contained the following language in the [6925A Amendatory Endorsement] "**Insuring Agreement**":

1. ***We*** will pay damages an ***insured*** becomes legally liable to pay because of:

   a. ***bodily injury*** to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy.

The Policy's "**Supplementary Payments**" provision in Form 9825A was amended by the 6925A Amendatory Endorsement effective January 15, 2011. The Amendatory Endorsement was in effect on the date of the Accident and contained the following language:

---

[1] We have presented the facts as directed by our Missouri Supreme Court in *Green v. Fotoohighiam*, 606 S.W.3d 113 (Mo. banc 2020).
[2] The Policy consisted of the Declarations Page, the Policy Booklet, and Amendatory Endorsement 6925A.

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* . . . . *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

. . . .

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

. . . .

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

The Policy provided as follows with respect to the "**Limits**" applicable to the Liability Coverage for "*bodily injury*":

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident.

. . . .

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

The Policy provided "**Bodily Injury Limits**" of up to $100,000 "*Each Person*" and $300,000 "*Each Accident*." At the time of the Accident, Craig qualified as an "insured" under the Policy, and the Policy provided coverage for the Accident consistent with the terms of the Policy.

The Accident was due to the negligence of Craig, and it caused significant bodily injuries to Walsh. Walsh filed suit against Craig on or about September 27, 2013 ("Underlying Action") for bodily injuries he sustained in the Accident as a result of Craig's negligence. On August 7, 2014, Walsh and Craig proceeded to a bench trial in the Underlying Action. Judgment in Walsh's suit was entered against Craig on August 7, 2014 (the "Underlying Judgment") in the total amount of $8,408,028.32, which included $158,028.32 in pre-judgment interest and $899.70 for costs. The

4

Underlying Judgment provided for post-judgment interest at a rate of 5.09%. On August 13, 2014, State Farm delivered to Walsh's attorney a check in the amount of $114,470.05, which reflected the following:

- Bodily injury liability coverage: $100,000.00 policy limit
- Prejudgment interest: $1,915.51
- Post-judgment interest: $10,554.53
- Costs including depositions: $2,000.00

State Farm calculated the post-judgment interest due using the balance of the Underlying Judgment, at a rate of 5.09% per annum, for nine days' time (even though it paid the benefits due under the Policy six days after the Underlying Judgment was entered). Walsh accepted State Farm's August 13, 2014 payment and filed a Partial Satisfaction of Judgment on August 20, 2014.

Following receipt of the $114,470.05 payment under the Policy, Walsh filed his Petition for Equitable Garnishment against State Farm and Craig, alleging that he was due additional amounts under the Policy.[3] Craig filed an answer and cross-claim against State Farm for bad faith failure to settle. Thereafter, State Farm and Walsh filed competing motions for summary judgment and State Farm also filed a motion for summary judgment as to Craig's bad faith claim.[4] State Farm alleged that the undisputed facts established that State Farm paid Walsh all it owed under the Policy in connection with his claims against Craig and the Underlying Judgment against her and that there were no additional amounts due under the Policy to either Walsh or Craig. Walsh claimed that the Policy's post-judgment interest provision required State Farm to pay post-judgment interest on the full amount of the Underlying Judgment until the amount *the insured*

---

[3] Section 379.200 provides that "the judgment creditor may proceed in equity *against the defendant and the insurance company* to reach and apply the insurance money to the satisfaction of the judgment." (Emphasis added.) All statutory references are to the REVISED STATUTES OF MISSOURI 2000, as supplemented through the 2013 Cumulative Supplement.

[4] The trial court entered summary judgment for State Farm on Craig's bad faith claim and Craig initially appealed from that ruling, but later dismissed her appeal as to the bad faith summary judgment ruling by the trial court and that issue is not before us in Craig's present appeal. Instead, in Craig's present appeal, Craig has only asserted claims of trial court error related to post-judgment interest coverage issues.

5

was legally liable to pay was paid. Walsh contended that Craig, State Farm's insured, was legally liable for the damages awarded in the Underlying Judgment; those damages had not been paid in their entirety; thus, pursuant to the plain language of the Policy, State Farm continued to owe post-judgment interest.

The trial court held a hearing on March 3, 2022, and heard arguments of counsel for Walsh, State Farm, and Craig. The trial court entered its judgment on March 8, 2022 ("Judgment"), granting State Farm's motion for summary judgment as to Walsh's Petition for Equitable Garnishment. The trial court concluded that "under Missouri law an insurer's obligation to pay post-judgment interest terminates when the insurer pays the amount of liability coverage due." The trial court found that the Policy was "unambiguous that State Farm's obligation to pay interest terminates when it pays the amount of liability coverage owed, the maximum of which is the Liability Coverage limit." The trial court further found that State Farm's August 13, 2014 payment "terminated State Farm's obligation to pay any additional interest under the terms of the Policy."

On March 21, 2022, Walsh filed a notice of appeal of the Judgment and was assigned case number WD85260. Thereafter, on April 1, 2022, Craig filed a motion for new trial and a notice of appeal of the Judgment and was assigned case number WD85285. On April 4, 2022, this Court ordered the two appeals consolidated under case number WD85260. These prematurely filed notices of appeal became effective on July 1, 2022, after the Judgment became final when Craig's motion for new trial was deemed denied ninety days after its filing. *See Coffer v. Wasson-Hunt,* 281 S.W.3d 308, 311 (Mo. banc 2009) (citing Rule 81.05(a)(2)(A), Rule 81.05(b)).

## Standard of Review

We review the grant of summary judgment *de novo* and apply the same criteria as the trial court in determining whether summary judgment was proper. *Green v. Fotoohighiam*, 606 S.W.3d

6

113, 115 (Mo. banc 2020). "'Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law.'" *Id.* (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011)). "'The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record.'" *Id.* at 116 (quoting *Goerlitz*, 333 S.W.3d at 453).

### Analysis

In Walsh's sole point on appeal, he asserts that the trial court erred in granting summary judgment in favor of State Farm because Walsh argues the Policy required State Farm to pay post-judgment interest until it paid the amount due under the Insuring Agreement, which Walsh contends is the full amount of the Underlying Judgment.[5] Craig raises two points on appeal, arguing that the trial court erred in entering summary judgment in favor of State Farm because: (1) the Policy required State Farm to pay post-judgment interest until it had paid the damages Craig was legally liable for, and the undisputed evidence demonstrated that State Farm paid only its liability limit coverage; alternatively, (2) the Policy is ambiguous and should have been interpreted in favor of coverage.

To establish an equitable garnishment claim brought directly against an insurer, the judgment creditor must prove: (1) that he obtained a judgment against the insurance company's insured; (2) that the policy was in effect at the time of the accident; and (3) that the injury was covered by the policy. *Sauvain v. Acceptance Indem. Ins. Co.*, 500 S.W.3d 893, 899 (Mo. App.

---

[5] In the argument portion of his brief, Walsh argues in the alternative that State Farm's policy language is ambiguous and susceptible to the interpretation that State Farm is obligated to pay more than the liability coverage limit, with this ambiguity interpreted in favor of coverage. "Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not preserved for our review." *Terpstra v. State*, 565 S.W.3d 229, 241 n.8 (Mo. App. W.D. 2019) (internal quotation marks omitted). That said, we will address the issue of ambiguity as that issue was properly asserted by Craig in Craig's second point relied on.

7

W.D. 2016) (citing § 379.200). The judgment creditor is "entitled to have *the insurance money, provided for in the contract of insurance* between the insurance company . . . and the defendant, applied to the satisfaction of the judgment." § 379.200 (emphasis added). Therefore, in this case, Walsh must also establish that State Farm failed to pay all that was owed under the Policy, including the Supplementary Payment of post-judgment interest, in connection with the Underlying Judgment against Craig. To establish a right to summary judgment, State Farm, as the defending party, must demonstrate either:

> (1) facts negating any one of the elements of the non-movant's claim; (2) that the non-movant, after an adequate period of discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one of the elements of the non-movant's claim; or (3) that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense.

*Goerlitz*, 333 S.W.3d at 453 (internal quotation marks omitted).

### Walsh's Point I and Craig's Point I

Because Walsh's and Craig's first points are nearly identical, we discuss them together. Both Walsh and Craig argue that the Policy required State Farm to pay post-judgment interest until the full amount of the Underlying Judgment was paid.

"An insurance company's liability is determined by the terms of its policy" and courts cannot hold an insurance company liable for interest "except in compliance with the policy terms." *Levin v. State Farm Mut. Auto. Ins. Co.*, 510 S.W.2d 455, 461 (Mo. banc 1974). Missouri courts consistently follow this policy-based approach to find that an insurer's liability to pay post-judgment interest terminates when it pays the applicable limit of liability under the policy. *Norman v. Progressive Preferred Ins. Co.*, 619 S.W.3d 126, 135 (Mo. App. W.D. 2021) (citing *Auto-Owners Ins. Co. v Ennulat*, 231 S.W.3d 297, 307 (Mo. App. E.D. 2007) (insurer is liable for post-judgment interest "only until such time as it pays the policy limits"); *White v. Auto Club*

8

*Inter-Ins. Exch.*, 984 S.W.2d 156, 158-59 (Mo. App. W.D. 1998) (insurer's liability to pay further interest ended when it paid the policy limit); *Lunde v. Am. Family Mut. Ins. Co.*, 297 S.W.3d 88, 93 (Mo. App. W.D. 2009) (affirming trial court's judgment that halted insurer's obligation to pay post-judgment interest on the date it paid the applicable limit of liability); *cf. Burns v. Smith*, 303 S.W.3d 505, 515 (Mo. banc 2010) (obligation to pay post-judgment interest continued because insurer had not paid limits of liability under the policy)).

"[T]he general rules for interpretation of contracts apply to insurance policies." *Franklin v. Lexington Ins. Co.*, 652 S.W.3d 286, 295 (Mo. App. W.D. 2022) (internal quotation marks omitted). "[W]hen interpreting contracts, this court attempts to avoid absurd results." *TNT Amusements, Inc. v. BFC Enters., Inc.*, 613 S.W.3d 403, 409 (Mo. App. E.D. 2020) (internal quotation marks omitted). *See also Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 536 (Mo. App. W.D. 2000) (same). "We will reject interpretation of a contract that yields unreasonable results when a probable and reasonable construction can be adopted." *TNT Amusements, Inc.*, 613 S.W.3d at 409.

Walsh and Craig cite to and rely upon *Miller v. Secura Insurance & Mutual Co. of Wisconsin*, 53 S.W.3d 152 (Mo. App. W.D. 2001), in support of their position that additional post-judgment interest is owed by State Farm. However, the *Miller* case actually demonstrates why Walsh and Craig's argument fails.

In *Miller*, the insurer had denied auto liability coverage for its insured (based upon an exclusion clause that was ultimately determined to be without merit by the equitable garnishment trial court) after its insured had been involved in a car wreck with Mr. Miller and the case proceeded to trial and entry of judgment in a total amount in excess of one million dollars. *Id.* at 154. Mr. Miller and his wife then asserted an equitable garnishment claim against the insurer for

9

the liability limit of coverage under the auto liability policy of $25,000, plus post-judgment interest on the total amount of the million-dollar judgment. *Id.* Of import, the insurer had *never* tendered payment of its liability policy limits of $25,000 at the time of the equitable garnishment proceeding. *Id.* On appeal, we agreed with the equitable garnishment trial court's conclusion that the asserted exclusion of coverage did not apply and the insurer was responsible under its auto liability policy up to its policy limit of $25,000, but we disagreed with the equitable garnishment trial court's conclusion that post-judgment interest was restricted to that portion of the underlying million-dollar judgment that did not exceed the $25,000 policy limit. *Id.* at 154, 157, 160. The supplementary payments provision of the auto liability policy in *Miller* was nearly identical to the present case, stating that post-judgment interest would accrue (without limitation to the policy limit) until such time as the insurer "ha[s] paid, offered to pay or deposited in court that portion of the judgment which is not more than our Limit of Liability." *Id.* at 156.[6] In our interpretation of the plain language of this clause from the auto liability policy, we concluded:

> This provision, however, relates to what [the insurer] must pay, offer to pay, or deposit into court before post-judgment interest will stop accruing. To stop interest from accruing, [the insurer] must pay "that portion of the judgment which is not more than [its] Limit of Liability." The provision has nothing to do with how post-judgment interest is calculated. ***Instead, it limits the <u>duration</u> of the liability for interest***.

*Id.* at 157 (emphasis added). Thus, because the insurer in *Miller* had never "paid, offered to pay, or deposited into court" its policy limit of $25,000, the insurer had not yet limited the <u>*duration*</u> of

---

[6] As Walsh and Craig argue, the introductory language of the supplementary payments provision in the current case is slightly different in one respect—that is, it requires the payment of interest on damages payable under the "Insuring Agreement" and not the "Limit of Liability." Yet, in this case, State Farm tendered post-judgment interest on the entire amount of Walsh's judgment against Craig and had never contended that it was liable for post-judgment interest only on the damages falling within the limit of its liability. Thus, we need not and do not address the issue of post-judgment interest being paid on the entire amount of the judgment versus the limit of liability. Instead, we have addressed the relevant issues of the "duration of the liability for interest" issue as well as Walsh and Craig's "isolated provision" argument in our discussion of the basis for today's ruling.

10

its responsibility to pay post-judgment interest on the entire amount of the underlying judgment. *Id.*

Conversely, here, State Farm did what the insurer in *Miller* failed to do; State Farm paid its policy limit and post-judgment interest on the entire amount of the Underlying Judgment for every day after the Underlying Judgment, up to and including the date upon which it had paid its policy limit to Walsh. Thus, as *Miller* teaches us, this act by State Farm "limits the duration of the liability for interest" owed by State Farm. *Id.*

Walsh and Craig next argue that there is no monetary limit in the Insuring Agreement subsection and, therefore, State Farm's obligation to pay post-judgment interest does not end until the damages Craig is legally liable to pay, *i.e.*, the full amount of the Underlying Judgment of $8,408,028.32, is paid, offered, or deposited in court by State Farm. Walsh and Craig's assertion that State Farm must pay more than $8 million beyond its Policy limit in order to stop the accrual of post-judgment interest "requires an interpretation of the [Policy] that renders an absurd result, in contravention of the basic rules of contract interpretation, and that this Court will not adopt." *TCN Invs., LLC v. Superior Detail*, 588 S.W.3d 245, 251 (Mo. App. W.D. 2019).

In interpreting an insurance policy, "[t]he entire policy and not just isolated provisions must be considered." *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 217 (Mo. banc 2014). Under the Liability Coverage section of the Policy, the Insuring Agreement subsection provides that State Farm will pay damages that Craig becomes legally liable to pay because of bodily injury to another caused by an accident involving a covered vehicle. The Limits subsection of the Liability Coverage section limits the amount State Farm "will pay for all damages resulting from **bodily injury** to any one **person** injured in any one accident" to the amount shown on the Policy's Declaration Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each

11

Accident." The Declarations Page limits the Liability Coverage for bodily injury to $100,000 Each Person. Thus, in this case, when we read all of the subsections of the Liability Coverage section of the Policy together, as we are required to do, the "amount due under the Insuring Agreement of [the Policy's] Liability Coverage" is the $100,000 Liability Coverage limit. "[T]he limit of the company's liability on the judgment . . . is fixed by the limit of liability stated in the declarations[.]" *Levin*, 510 S.W.2d at 458. The parties do not dispute that State Farm paid the $100,000 Liability Coverage limit stated on the Declarations Page of the Policy on August 13, 2014.

The relevant question is: What do the terms of the Policy require State Farm to do to terminate its obligation to pay post-judgment interest? The Policy's "Supplementary Payments" subsection of the Liability Coverage section states that State Farm will pay, "in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage":

> 3. Interest the ***insured*** is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:
>
> . . . .
>
> b. after a judgment.
>
> ***We*** have no duty to pay interest that accrues after ***we*** deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage.

The concluding paragraph describes the event that terminates State Farm's obligation to pay post-judgment interest: when State Farm pays "the amount due under the Insuring Agreement of this policy's Liability Coverage," which we have determined in this case is the $100,000 Liability Coverage limit.

Accordingly, we conclude that State Farm terminated its ongoing obligation relating to the payment of post-judgment interest when it paid Walsh the $100,000 bodily injury liability limit. The Declarations Page in the Policy clearly established the limit of liability for bodily injury at

$100,000. "In accord with *Levin* and its progeny, [State Farm's] payment to [Craig] of the $100,000 bodily injury liability limit in the days following the entry of judgment was sufficient under the [Supplementary] Payments provision of [Craig's] policy to terminate [State Farm's] obligations related to the payment of post-judgment interest." *Norman*, 619 S.W.3d at 136. Walsh has not established that State Farm failed to pay all that is owed under the Policy, including the Supplementary Payment of post-judgment interest, in connection with the Underlying Judgment against Craig. The trial court did not err in entering summary judgment in favor of State Farm and against Walsh.

Walsh's Point I and Craig's Point I are denied.

### Craig's Point II

Craig argues in her second Point that State Farm's agreement to pay "the amount due under the **Insuring Agreement** of this policy's Liability Coverage" is susceptible to the interpretation that State Farm's obligation to pay post-judgment interest is not terminated until the full amount of the Underlying Judgment is paid, and, therefore, the Policy is ambiguous and the trial court erred in not interpreting it in her favor.

"As with summary judgment, '[t]he interpretation of an insurance policy, and the determination of whether coverage and exclusion provisions are ambiguous, are questions of law that [we] review[ ] *de novo*.'" *Jones v. Am. Fam. Mut. Ins. Co., S.I.*, 632 S.W.3d 482, 487 (Mo. App. W.D. 2021) (quoting *Mendenhall v. Prop. & Cas. Ins. Co.*, 375 S.W.3d 90, 92 (Mo. banc 2012)). "'When interpreting an insurance policy, [we] give[ ] the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance.'" *Id.* (quoting *Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. banc 2017)). "If a policy is clear and unambiguous, we construe it as written." *Id.* (internal quotation

marks omitted). "If, however, a policy is ambiguous, meaning that there is duplicity, indistinctness, or uncertainty in the meaning of the language used in the policy so that it is reasonably open to different constructions, we must construe the policy in favor of the insured." *Id*. (internal quotation marks omitted). "In determining whether an ambiguity exists, we must evaluate the policy as a whole rather than focus on an isolated provision." *Id*. (internal quotation marks omitted). "We will not create an ambiguity when none exists." *Id*. (internal quotation marks omitted).

"The mere fact that the parties disagree as to the meaning of a term or clause in an insurance policy does not give rise to an ambiguity." *Siddens v. Phila. Indem. Ins. Co.*, 631 S.W.3d 675, 681 (Mo. App. W.D. 2021) (internal quotation marks omitted). Craig contends that because the prepositional phrase "of this policy's Liability Coverage" is found in the language describing the amount on which post-judgment interest is to be calculated, and State Farm paid post-judgment interest on the entire amount of the Underlying Judgment, then it is reasonable for an insured of average understanding to interpret the phrase "the amount due under the **Insuring Agreement** of this policy's Liability Coverage" to mean the accrual of post-judgment interest terminates when the entire amount of the Underlying Judgment is paid. Craig's argument conflates the language in the Policy on how post-judgment interest is to be calculated with the language in the Policy limiting the *duration* of State Farm's liability for interest.

An ordinary person of average understanding purchasing insurance would understand that State Farm's obligation to pay damages that Craig became legally liable to pay because of bodily injury to Walsh caused by an accident involving the covered Honda was limited to the amount shown on the Policy's Declaration Page of $100,000 Each Person. We find that the Policy is unambiguous, as there is no "duplicity, indistinctness, or uncertainty" in the meaning of the

14

language that the "amount due under the **Insuring Agreement** of this policy's Liability Coverage" is the $100,000 Liability Coverage limit. The trial court did not err in determining that payment of the liability limit under the Policy terminated State Farm's obligation to pay any additional post-judgment interest under the terms of the Policy other than the post-judgment interest amount that it paid along with the payment of its liability policy limit.

Craig's Point II is denied.

## Conclusion

The trial court's judgment is affirmed.

/s/ *Mark D. Pfeiffer*

Gary D. Witt, Chief Judge, and John M. Torrence, Special Judge, concur.

15