Robert C. VERSAW and Myrtle I. Versaw, Respondents,

v.

Judy Earline VERSAW, Respondent,

and

American Family Mutual Insurance Company, Appellant.

No. 27158.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 3, 2006.

Motion for Rehearing or Transfer Denied Aug. 25, 2006.

Application for Transfer Denied
Oct. 31, 2006.

prejudice.

Gary R. Cunningham, Tamara F. de Wild, Lathrop & Gage, L.C., Paul F. Sherman, Mann, Walter, Bishop & Sherman, P.C., Springfield, for appellant.

James A. Miller, James A. Miller, P.C., Springfield, for respondents Robert C. Versaw and Myrtle I. Versaw.

Jerry L. Reynolds, Reynolds & Conway, P.C., Springfield, for Judy Earline Versaw.

KENNETH W. SHRUM, Presiding Judge.

The questions presented by this case arise from Appellant's failed attempt to use exclusionary clauses in three automobile liability policies to avoid coverage for claims arising from an automobile accident. The case reaches this court via appeal from a summary judgment in an "execution/garnishment" proceeding.

The judgment adverse to Appellant resulted because the trial court found multiple reasons why the various coverage exclusion clauses invoked by Appellant were invalid and did not preclude coverage as Appellant claimed. We agree that the "household exclusion" part of these policies, when read in context, is ambiguous and thus invalid.[1] However, we find coverage under only one policy, namely, the one that insured the vehicle involved in the

accident. We further find Appellant owed interest on the damage award from the date of its entry. Accordingly, the judgment is affirmed in part and reversed and remanded in part.

## FACTS

Larry Versaw ("Decedent") and Judy Versaw ("Defendant"), husband and wife, bought three liability policies from Appellant in the spring of 1986. These policies were for vehicles owned by them: (1) a 1972 Volkswagen, (2) a 1974 Chevrolet Nova, and (3) a 1973 Chevrolet Vega. The policies each provided $100,000 single limit bodily injury liability coverage.

Each policy contained multiple "exclusion" clauses that described instances when otherwise promised liability coverage did "not apply." Among these was Exclusion No. 10, the so-called "household exclusion." *See* n. 1.

On July 26, 1986 (at a time when all three policies were in effect), Defendant drove her Volkswagen across a highway centerline into a collision with an oncoming motor vehicle. Decedent was a passenger in the Volkswagen. He sustained injuries that led to his death on August 21, 1986.

Ultimately, Decedent's parents ("Plaintiffs") sued Defendant and the other vehicle driver for the wrongful death of Decedent.[2] Thereon, Appellant relied on "household exclusion" language to deny liability coverage to Defendant. Although Appellant did proffer a defense to Defendant, it did so under a reservation of

---

1. "As a very general rule, a 'household exclusion' provision in an automobile liability policy refers to a limitation or exclusion from providing coverage for bodily injury insurance to the insured or any one connected with the insured by blood or affinity." *Kearbey by Kearbey v. Kinder*, 972 S.W.2d 575, 577 n. 1 (Mo.App.1998).

2. As indicated, in this opinion when referring to Judy Versaw individually, we call her "Defendant." When referring to Decedent's parents, we call them "Plaintiffs." Collectively, we refer to Plaintiffs and Defendant as "Respondents."

rights. Defendant rejected that offer, and on February 26, 1997, Plaintiffs obtained a consent judgment against Defendant for $953,000. This was done pursuant to section 537.065.[3]

Once issues were joined in Plaintiffs' execution and garnishment effort to collect the judgment, the trial court sustained Plaintiffs' motion for summary judgment. This occurred June 27, 2005. Specifically, the trial court ruled that Appellant's family exclusion provision was not valid to exclude coverage in this instance; that Defendant was insured under all three policies for the full coverage, i.e., $100,000 plus post-judgment interest on each policy. Judgment for $1,667,754.03 was entered for Plaintiffs and against Appellant. This appeal followed.

### STANDARD OF REVIEW

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. v. Mid-Am. Marine,* 854 S.W.2d 371, 376[1] (Mo. banc 1993). This means that the party moving for summary judgment bears the burden of establishing a right to judgment as a matter of law on the record as submitted. *Id.* at 382[19]. "Our review is essentially *de novo.*" *Id.* at 376[4].

### DISCUSSION AND DECISION

*Point III: Ambiguity Of Household Exclusion*

The household exclusion at issue reads as follows:

"This [liability] coverage does not apply to:

. . . .

"10. **Bodily injury** . . . to any person related to and residing in the same household with the operator."

The emboldened words in Exclusion 10 signify those words were defined in the insurance contract. The trial court used certain of these contract definitions to conclude Appellant could not use Exclusion 10 to avoid coverage for this accident.

The definition first relied on by the court provided this:

"As used throughout this policy, except where redefined, and shown in bold type:

. . . .

"13. **You** and **your** mean the policyholder named in the declarations and spouse, if living in the same household."

The trial court ruled, *inter alia,* that when the defined terms **"you"** and **"your"** were read with the language in Exclusion 10, there was no coverage exclusion for the death of Decedent; consequently, Appellant owed Defendant coverage for claims asserted against her for the wrongful death of Decedent.

Specifically, the trial court reasoned as follows:

"B. Exclusion No. 10 in such policy does not exclude coverage for the death of Larry Versaw herein for reasons including the following:

"1. Exclusion No. 10 does not exclude coverage to 'you' or 'your.' Under policy definition No. 13, 'you' and 'your' mean the policyholder named in the declarations and spouse, if living in the same household. Larry and Judy Versaw are named in the declarations and each of them are 'you' and 'your'. Exclusion No. 10 does not exclude coverage to 'you' or 'your.' "

---

3. All statutory references are to RSMo (2000), unless otherwise stated.

Appellant's third point urges reversal of the summary judgment to the extent it is based on finding number one, the "you" and "your" definition. Appellant's position is that under the plain language of Exclusion 10, no coverage existed for Plaintiffs' claim because Defendant and Decedent were "clearly ... encompassed in the term 'any person.'" It avers that the "any person" phrase is unambiguous when it is read and applied in context; consequently, rules of interpretation used when contract language is ambiguous have no application here. *Am. Family Mut. Ins. Co. v. Ward*, 789 S.W.2d 791, 795 (Mo.banc 1990).

Respondents counter by arguing that since "you or your" refer to Defendant and Decedent (via policy definition), the absence of those terms in Exclusion 10 means Exclusion 10 does not apply to Defendant and Decedent. They say that the term "any person" in Exclusion 10 does not encompass "you" or "your," hence their assertion that Exclusion 10 did not exclude Defendant and Decedent from coverage.

The essence of Respondent's argument is that once the policy defined "you" and "your" as "the policyholder named in the declarations and spouse," it could not rely on the "any person" language in Exclusion 10 to exclude Defendant and Decedent from coverage; that any attempt to do so reveals the ambiguity in the policy; and being ambiguous, the policy must be construed against Appellant. *See Keisker v. Farmer*, 90 S.W.3d 71, 74[9] (Mo.banc 2002); *Little v. Am. States Ins. Co.*, 179 S.W.3d 433, 439[6] (Mo.App.2005).

■ The rules of contract construction govern insurance policies. *Blair by Snider v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605, 606[3] (Mo.banc 2003). As such, when analyzing an insurance con-

tract, the entire policy and not just isolated provisions or clauses must be considered. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77[1] (Mo.banc 1998); *Doty v. Am. Nat. Ins. Co.*, 350 Mo. 192, 165 S.W.2d 862, 869 (1942).

■ If an entire policy is analyzed in context and found to be unambiguous, i.e., its language is plain, straightforward, and susceptible of only one meaning, the rules of construction are inapplicable, and absent public policy to the contrary, the contract will be enforced as written. *Krombach v. Mayflower Ins. Co. Ltd.*, 827 S.W.2d 208, 210[1] (Mo.banc 1992); *Schoettger v. Am. Nat. Prop and Cas. Co.*, 10 S.W.3d 566, 569[7] (Mo.App.2000).

■ Different rules attend if provisions of an insurance policy (when read in the context of the policy as a whole) are ambiguous, i.e., there is duplicity, indistinctness, or uncertainty in its meaning, and the policy is therefore open to different constructions. If ambiguity exists, the policy "will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy." *Little*, 179 S.W.3d at 439[7]. Ambiguous policy language must be construed against the insurer. *Krombach*, 827 S.W.2d at 210[3]. "This rule is especially applicable where insurance is first 'granted' and is then followed by provisions limiting or avoiding liability." *Irelan v. Standard Mut. Ass'n of Cassville*, 379 S.W.2d 815, 819 (Mo.App.1964).

Here, the "any person" phrase in the household exclusion part of Exclusion 10 is not defined by Appellant's policy. Therefore, if we could analyze the household exclusion clause in isolation, we would agree it had plain meaning and clearly excluded Defendant and Decedent from

coverage.[4]

However, we know of no rule of law allowing that approach. To the contrary, the household exclusion part of Exclusion 10 must be read in context. *Schauf*, 967 S.W.2d at 77; *Doty*, 165 S.W.2d at 869. When that is done, the meaning of "any person" in the household exclusion part of Exclusion 10 becomes ambiguous. This results because, with one exception, the defined terms **"you"** or **"your"** or **"insured person"** are used throughout the policy exclusions to explain when Decedent and Defendant (as a class of persons) were excluded from the previously promised coverage. The single exception is the household exclusion provision, where the undefined phrase "any person" is used. The selective use of defined terms to exclude coverage except for the household exclusion could reasonably create the impression to a lay person who bought the policy that the defined phrases (**"you,"** **"your,"** and **"insured person"**) referred to a mutually exclusive class, separate and different than the "any person" class.

To explain more fully, we start with "PART I–LIABILITY COVERAGE[.]" It reads, "[y]**ou** have this coverage if Bodily Injury Liability and Property Damage liability coverage is shown in the declarations. **We** [Appellant] will pay damages an **insured person** is legally liable for because of **bodily injury** and **property**

damage due to the **use** of a **car** or **utility trailer."**

An attentive reader will recall that emboldened words in the policy signify that such phrase is one defined by the policy. The term **"insured person"** (used in the promise of liability coverage) is not in the section entitled "DEFINITIONS USED THROUGHOUT THIS POLICY" where **you** and **your** are defined. It is, however, found in the liability section under the heading **"ADDITIONAL DEFINITION USED IN THIS PART ONLY."** There, the **"[i]nsured person or insured persons"** are defined to mean, *inter alia,* **"[y]ou or a relative."**

As such, Appellant's policy had two contractually defined terms available for use when referencing Defendant or Decedent in the exclusions part of the liability section, specifically, **"you/your"** or **"insured person."** However, Appellant's household exclusion clause used neither of the defined terms. The significance of this is not fully apparent until the household exclusion is read in conjunction with the eleven adjacent liability exclusionary clauses.

To start with, four of the exclusions relate to exclusionary "events" rather than the "class" of persons being excluded from coverage. In those four instances, no references to a "class" were needed and none were made.[5] Stated differently, neither

---

4. When "any person" is read without considering its context and relationship to other contract provisions, resorting to standard English language dictionaries might lead the average lay person to understand that the exclusion encompasses all persons (meaning no coverage for Defendant for Decedent's wrongful death). Thus, RANDOM HOUSE WEBSTER's UNABRIDGED DICTIONARY 96 (2d ed.1997) defines "any" as "in whatever quantity or number, great or small," "every [or] all," "anybody," or "anyone." Another dictionary source, WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 97 (1997) defines "any" variously as "1. one or more indiscriminately of whatever kind;"

"a. one or another[;]" "b. one, no matter what one[;]" and 2. "one, some or all indiscriminately of whatever quantity."

5. We do not list verbatim all "event" exclusions in the policy. However, the following is typical of "event" exclusion language as used in the four instances cited.

"This [liability] coverage does not apply to
. . . .
"12. **Bodily injury** ... occurring while preparing for or taking part in a prearranged or organized racing or speed contest."

the undefined phrase "any person" nor the defined words (**"you/your"** or **"insured person"**) were needed to explain event exclusions.

■ Of the eight remaining exclusionary clauses, seven use contractually defined terms to designate the class of persons that are excluded from coverage; they either contain the phrase **"you/your"** or **"insured person."** [6] In contrast, Exclusion 10 makes no reference to either **"you"** or **"your"** or **"insured person."** Where a term is used in one clause of a policy, its absence in another clause is significant. *Williams v. North River Ins. Co.*, 579 S.W.2d 410, 412[3] (Mo.App.1979). This rule of interpretation carries extra weight when, as here, the clauses being compared are exclusions that appear immediately adjacent to each other in the policy. *Reese v. U.S. Fire Ins. Co.*, 173 S.W.3d 287, 299 (Mo.App.2005).

With the policy thus structured, we are persuaded an ordinary lay person who bought this policy, if confronted with a claim by Appellant of non-coverage because of the household exclusion, could (upon reading all relevant provisions) reasonably find two different answers, one being coverage and the other for exclusion. By definition, that is ambiguity. *Schauf*, 967 S.W.2d at 80. At the very least, the policy is ambiguous as to whether Defendant is barred from coverage under the household exclusion. Such ambiguity causes us to interpret the policy, and specifically, Exclusion 10, in a light most favorable to Respondents and against Appellant. *Haulers Ins. Co. v. Wyatt*, 172 S.W.3d 880, 884[6] (Mo.App.2005). Accordingly, we find that, at a minimum, Appellant owed Defendant coverage on the policy that insured the Volkswagen.

We find some additional support for this by looking at a line of cases exemplified by *Econ. Fire & Cas. Co. v. Kubik*, 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d 504 (1986). In *Kubik*, the issue was whether Economy owed coverage for the fourteen-year-old daughter of Edward Kubik after she took her father's car, wrecked it, and caused the death of a passenger. On appeal, Economy argued that "although [Edward's daughter] is a 'family member' under the terms of Edward's policy, nevertheless, Economy is not obligated to defend or indemnify [the daughter] for claims arising from this particular accident because of an exclusion in the policy ... that bars coverage 'for any person using a vehicle without a reasonable belief that the person is entitled to do so.'" *Id.* at 505–06. The Illinois appellate court disagreed, reasoning as follows:

> "[W]hile the terms 'family member' and 'any person' have a clear meaning when standing alone, that meaning can become, as in the instant case, ambiguous through the manner in which those terms are used throughout the policy. In this regard, we note that the terms 'family member' and 'any person' are used selectively throughout the policy's exclusions in such a way as to create the impression that they refer to mutually exclusive classes.
>
> . . . .
>
> "This selective use of the term 'family member' and 'any person' is critically important for the term 'family member'

---

6. We do not list all seven exclusionary clauses in which Appellant used defined terms to describe the class being excluded from coverage. The following suffices to illustrate such usage.

"This [liability] coverage does not apply to:

. . . .

2. **Bodily injury** ... caused by an intentional act of, or at the direction of, an insured person even if the actual injury ... is different than that which was expected or intended."

is notably absent from [E]xclusion # 11. Again, [E]xclusion # 11 bars coverage 'for any person using a vehicle without a reasonable belief that the person is entitled to do so.' Exclusion # 11 does not bar, as several other exclusions specifically do, coverage for a 'family member.' Consequently, a reading of the policy gives rise to the implication that a 'family member' is barred from coverage by only those exclusions wherein the term 'family member' is specifically included (nos. 3, 6 and 10) and is likewise not barred from coverage by those exclusions such as [E]xclusion # 11, which do not contain the term 'family member.' As a result, because the policy considers a 'family member' and 'any person' as two distinct classes, and because [E]xclusion 11 does not include the term 'family member' whereas several other exclusions within the policy specifically do, it is apparent that at the very least, an ambiguity is created with regard to whether a 'family member' is barred from coverage by [E]xclusion # 11."

*Kubick* at 507.[7]

Although *Kubick* and the cases in note 7 did not deal with a household exclusion clause and had other language that differed from Appellant's policy language, we believe the cases are sufficiently analogous to be instructive and provide some support for our finding that this policy was ambiguous.[8]

In so finding, we do not ignore *Ward,* 789 S.W.2d 791. There the Supreme Court of Missouri characterized a household exclusion clause identical to the one here as "unequivocal and unambiguous and is not subject to construction or interpretation." *Id.* at 796. Appellant insists "this court should not deviate from that ruling" and suggests that *Ward* compels us to find the trial court erred when it found ambiguity in the policy. We disagree.

First, it is appropriate to note that the household exclusion at issue here appears to be uniquely worded. Despite a nationwide case search, *Ward* is the only case we have found that addresses a policy with the language at issue here.

■ Second, the *Ward* court's characterization of this language as "unequivocal and unambiguous" (made near the end of the opinion) was *obiter dicta.* This follows because there were no allegations of policy ambiguity in *Ward* and the characterization of the clause as "unequivocal and unambiguous" was not essential to the issue presented there.[9] As the *Ward* opinion

---

7. The *Kubick* case does not stand alone. Other cases that have found similar policy provisions ambiguous include *Rutgers Cas. Ins. Co. v. Collins,* 313 N.J.Super. 79, 712 A.2d 709 (A.D.1998); *United Services Auto. Ass'n v. Dunn,* 598 So.2d 1169 (La.Ct.App.1992); *Am. States Ins. Co. v. Adair Indus.,* 576 N.E.2d 1272 (Ind.App. 4 Dist.1991); *Hartford Ins. Co. of Illinois v. Jackson,* 206 Ill.App.3d 465, 151 Ill.Dec. 451, 564 N.E.2d 906 (1990); and *State Auto. Mut. Ins. Co. v. Ellis,* 700 S.W.2d 801 (Ky.Ct.App.1985). *See also* LEE R. RUSS & THOMAS SEGALLA, COUCH ON INSURANCE 3D § 114:3 at 114–9 (1997).

8. We acknowledge the cases just cited have been called the "minority" view and that the so-called "majority" view is that found in *Close v. Ebertz,* 583 N.W.2d 794, 796 (N.D. 1998) (noting that "[t]he majority of courts ... have concluded the 'any person' language unambiguously includes a 'family member,' and there is no coverage under these circumstances.") However, "[l]ike witnesses, foreign authorities should be weighed and not counted." *Michigan Mut. Liab. Co. v. Stallings,* 523 S.W.2d 539, 545[6] (Mo.App.1975). Upon reading the relevant foreign authorities, we noted that the language of the policy here was generally more akin to that found in the "minority view" cases than that at issue in the "majority" view cases.

9. By definition, *obiter dicta* is a gratuitous opinion, or stated another way, it is a statement by a court that is not essential to the court's decision of the issue before it. *Swish-*

succinctly explained, "[t]he single question presented on appeal is whether the household exclusion clause in a policy of motor vehicle liability insurance issued in Missouri is void because it violates the public policy of this state as expressed in the Safety Responsibility Law." *Id.* at 792. The prospect that the otherwise unambiguous phrase "any person" might become ambiguous through the manner in which it and other defined terms were used throughout the policy (especially in the exclusionary clauses) was not before the *Ward* court.

█ While *dicta* can be persuasive when supported by logic, it is not precedent that is binding upon this court. *Swisher,* 124 S.W.3d at 482[6]. Thus, despite the correctness of the *Ward* court's observation about the unambiguous nature of this language when it is read in isolation, *see* n. 4, *Ward* is not authority that supports Appellant's argument.

In sum, we find that the trial court did not err when it found ambiguity in the subject policy nor did it err when it ruled Defendant was covered by the policy insuring the Volkswagen at the time of the accident. Appellant's third point is denied.[10]

*Point II: "Unreasonable And Unconscionable" Finding*

█ The trial court found, *inter alia,* that Exclusion 10 did not exclude coverage for Decedent's death because Defendant and Decedent purchased "three policies of insurance from [Appellant] and paid premiums on all three policies." Without further explanation, the court declared that "[a]ny policy interpretation that there is no liability coverage [for Defendant] from any

*er v. Swisher,* 124 S.W.3d 477, 482[5] (Mo. App.2003).

**10.** Our decision on Point III means we need not address Points I, IV, and V where Appel-

of the three policies is unreasonable and unconscionable."

Appellant's third point maintains the trial court erred to the extent it used this reasoning to hold Defendant was covered by all three policies. The essence of Appellant's argument is that even if Exclusion 10 is ambiguous and thus invalid, the subject policies still have "anti-stacking" language that limits coverage to one policy, chiefly the one covering the Volkswagen. Continuing, Appellants contend that the "anti-stacking" provision is one that the parties were free to contract for in that neither the Motor Vehicle Financial Responsibility Law nor any other public policy precludes such provisions. As authority for this, Appellant places its principal reliance on *Noll v. Shelter Ins. Companies,* 774 S.W.2d 147 (Mo.banc 1989).

In *Noll,* the insurer claimed policy language precluded the stacking of liability coverages even though the insured had bought and paid for two policies, each with policy limits of $100,000. Specifically, it cited this provision:

"With respect to any occurrence, accident, death, or loss to which this and any other automobile insurance policy issued to the named insured or spouse by the company also applies, *the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy.*"

*Id.* at 149 (emphasis added). The Supreme Court of Missouri agreed, saying the clause was not ambiguous and that the coverage at issue (liability coverage) was

lant challenges as erroneous various other reasons given by the trial court for finding that Appellant owed Defendant coverage.

not mandated by statute at the time the liability arose, i.e., before the effective date of the Motor Vehicle Financial Responsibility Law on July 1, 1987. *Id.* at 151–52. As such, "the parties were free to contract as to the limits of coverage." *Id.* at 151.

Here, the policies at issue contain this clause:

"3. **Two or More Cars Insured.** The total limit of **our** liability under all policies issued to **you** by **us** shall not exceed the highest limit of liability under any one policy."

In part, Appellant relies on this provision to claim it contractually limited its exposure to one policy and that Defendant is bound by that contract term. We find merit in that argument.

First, we can discern no significant difference between this provision and the one in *Noll.* In keeping with *Noll,* we find that Appellant's anti-stacking clause is not ambiguous. Second, here as in *Noll,* the subject accident happened before the effective date of the Motor Vehicle Financial Responsibility Law; consequently, liability coverage was not mandated and the parties could agree to such terms and conditions as they saw fit. *Id.*[11]

Based on *Noll,* we rule the trial court erred to the extent it intended to hold that Appellant owed coverage under all three policies because it was "unreasonable and unconscionable" to accept premiums on three policies but afford coverage under only one policy. To the extent the trial court based its summary judgment on that reasoning, Point II has merit.

*Point VII: Did Exclusion 9 Preclude Multiple Policy Coverage?*

 As part of its summary judgment filings, Appellant averred that the only applicable insurance policy was the one for the vehicle involved in the accident, (the Volkswagen). Appellant relied on Exclusion No. 9 to support that defense.

The cited exclusion recites that the liability coverage otherwise provided "does not apply to ... [b]odily injury ... arising out of the **use** of any vehicle, other than **your insured car**, which is owned by or furnished or available for regular **use** by **you** or any resident of **your** household." Appellant took the position that this clause kept Defendant from being covered under the Nova or Vega policies because uncontroverted evidence established the Volkswagen fit the Exclusion 9 description, namely, it was not Defendant or Decedent's **insured car**, yet it was one owned by them and available for their use.

The trial court ruled, however, that Appellant's reliance on Exclusion 9 was misplaced, saying:

"D. Exclusion No. 9 in the 'Nova policy' and the 'Vega policy' does not exclude coverage [because]:

"1. The Volkswagen was an *additional private passenger car* under both the 'Nova policy' and the 'Vega policy' and thus Exclusion 9 does not apply." (Emphasis added.)

The factual context for this ruling follows. The Nova policy term was June 6, 1986, to December 6, 1986, and the policy term on the Vega was May 22, 1986, to November 22, 1986. Each policy defined "[y]our insured car" to mean "[a]ny addi-

---

11. The *Ward* court declared the public policy under the Safety Responsibility Law to be as follows:

> "[T]he procurement and the extent of automobile liability insurance coverage was voluntary [under the SRL], not mandatory. A corollary of [this rule] is that the parties to a purely voluntary insurance contract may agree to such terms and provisions as they see fit to adopt, subject only to the requirements that the contract is lawful and reasonable."

789 S.W.2d at 795[4] (citations omitted).

tional **private passenger car** ... of which **you** acquire ownership during the policy period. **You** must tell **us** within 30 days of its acquisition that **you** want **us** to insure the additional car." [12] Defendant and Decedent bought the Volkswagen on June 10, 1986, and insured it with Appellant via a separate policy issued June 13, 1986. There is no evidence the Volkswagen was ever added as an "additional car" under the Nova policy or Vega policy. Nor is there any evidence that additional premiums were charged or paid to cover the Volkswagen under the Nova or Vega policy. Moreover, the subject accident involving the Volkswagen occurred July 26, 1986, forty-six days after the Volkswagen was purchased and forty-three days after the policy on the Volkswagen was issued.

Appellant's seventh point maintains that the undisputed facts as recited, coupled with clear policy language, refute and render erroneous, as a matter of law, the trial court's apparent conclusion that the Volkswagen was an "additional private passenger car" as contemplated by the policy and was, therefore, an "insured car" that made Exclusion 9 inapplicable. We agree that the trial court erred in so finding.

▇▇▇▇ In Missouri, automatic coverage for a newly acquired motor vehicle is not mandated by statute or other public policy. *Magruder v. Shelter Ins. Co.*, 985 S.W.2d 869, 871–72 (Mo.App.1998). When an insurance contract has a "newly acquired vehicle" coverage clause, the coverage is only automatic if timely requested. Most policies, including this one, require a person to notify the insurer within thirty days of purchase if he or she wants the

new vehicle insured under the old, existing policy.[13]

▇▇▇▇ In no event is a policy holder who buys a replacement car or an additional vehicle forced to use the newly acquired vehicle part of an old policy to insure the newly acquired machine. For instance, he or she can buy liability coverage from a different company or they can buy a separate policy from the same company that insures his or her other vehicles. When the latter happens—as it did here—the automobile specifically described in the new and separate policy is no longer a newly acquired automobile within the contemplation of the old policy and the provisions of the new and separate policy provide the only coverage for such newly acquired vehicle. LEE R. RUSS & THOMAS SEGALLA, COUCH ON INSURANCE 3D § 117:9 at 117–19 (1997).

Because Defendant and Decedent bought a separate policy for the Volkswagen on June 13, 1986, it was not an "additional **private passenger car**" under the Nova policy or the Vega policy on July 26, 1986, and therefore was not an **"insured car"** under those policies at that time. As such, Exclusion 9 kept Defendant from being covered by the Nova and Vega policies for the Volkswagen accident. The trial court erred when it ruled otherwise and used that ruling to find Appellant owed coverage under the Vega and Nova policies. Appellant's seventh point has merit.

*Point VI: Waiver Or Estoppel from Invoking Exclusion No. 9*

▇▇▇▇ The trial court also found Appellant owed three coverages for the subject

---

**12.** Presumably, the trial court had this definition in mind when it used the italicized phrase "additional private passenger car" in paragraph D.1 of its judgment.

**13.** In 20 C.S.R., § 500–2.100(F) the following is found:

"Newly acquired and replacement automobile coverage provisions shall provide not fewer than thirty (30) days within which to advise the company of the acquisition."

accident because Appellant was estopped from raising Exclusion 9 as a defense in that "it did not raise the exclusion until a number of years after its initial coverage denial which was based only on Exclusion 10, to the prejudice of Plaintiffs." The undisputed facts relevant to this finding are as follows.

Appellant wrote a "denial of coverage" letter to Defendant on December 6, 1988, in which Appellant acknowledged receipt of the wrongful death suit papers. The letter recited that "[Appellant] insured your 1972 Volkswagon [sic] Beetle under Policy # 24–345016–41[ ]" and "[t]his policy was in force" on the date of the accident. However, this denial letter then referred Defendant to Exclusion 10 of the subject policy. After quoting the exclusion and recounting facts that Appellant claimed triggered Exclusion 10, Appellant's letter advised Defendant of Appellant's position that it (No. 10) kept her from being covered. Continuing, Appellant used the letter to advise it would defend the Plaintiffs' suit, but would "retain the right to reserve the defense of no coverage." Significantly absent from Appellant's December 6, 1988, denial letter is any mention of the Vega or Nova policies.

In September 1998, Plaintiffs propounded "Interrogatories to Garnishee [Appellant]." Appellant answered the interrogatories on November 2, 1998. Plaintiffs then filed written exceptions to the garnishment-interrogatory answers. This filing (which occurred November 12, 1998) contained the first allegation of record, either by Plaintiff or Defendant, that Appellant owed Defendant a coverage under the Vega and Nova policies.

Appellant promptly filed a written response to Plaintiff's written exceptions. That response (filed November 23, 1998)

affirmatively asserted Exclusion 9 as a policy defense to any claimed coverage for Defendant concerning the Vega and Nova policies. Moreover, Appellant cited another policy provision that it claimed precluded stacking of liability limits, specifically the provision quoted as we discussed Appellant's second point relied on.

The pleadings just described were attached as exhibits to the summary judgment motion filed by Appellant. They were also included in Appellant's response to Plaintiffs' motion for summary judgment. With the record in this posture, the trial court found Appellant was estopped from raising Exclusion 9 as a defense to Plaintiffs' claim of coverage under the Vega and Nova policies.

Appellant's sixth point charges the trial court erred to the extent it used this ruling as a basis for summary judgment favorable to Respondents. This court agrees.

 To estop an insurer from asserting a policy defense, Missouri law requires that the insured show (1) the insurer asserted a policy defense in denying coverage and later asserted another inconsistent ground, (2) the insurer's actions induced the insured to rely on the original defense and thereby caused the insured injury, and (3) the insured suffered prejudice as a result of such reliance. *Shahan v. Shahan*, 988 S.W.2d 529, 533–34[7] (Mo. banc 1999); *Brown v. State Farm Mut. Auto Ins. Co.*, 776 S.W.2d 384, 388 (Mo. banc 1989). Estoppel will not be lightly embraced in an insurance coverage case; it only has application when all elements thereof clearly appear. *Whitney v. Aetna Cas. & Sur.*, 16 S.W.3d 729, 733[5] (Mo. App.2000).

Here, the elements of estoppel are unproven and the trial court erred when it ruled otherwise. As noted above, the first evidence that Plaintiffs or Defendant asserted coverage under the Nova or Vega policies is found in Plaintiffs' objections to

interrogatory answers filed November 12, 1998. Once Appellant learned of those claims, it promptly asserted a policy defense per Exclusion 9. Under the circumstances, Appellant's initial claim that Exclusion 10 precluded coverage under the Volkswagen policy (as stated in the December 6, 1988, letter) was not inconsistent with Appellant invoking Exclusion 9 in 1998 when first apprised of allegations that the Vega and Nova policies were implicated. Appellant's use of Exclusion 9 to defend coverage claims under the Vega and Nova policies was not a belated assertion. To the contrary, it was a promptly asserted defense to newly asserted coverage claims. Thus, the first estoppel element is unproven.

We also note that Respondents have not explained how Defendant relied upon Appellant's actions nor how Defendant was injured by any alleged reliance. Nor do Respondents point to facts showing prejudice. This is understandable considering our explanation of why the first element was unproven. The doctrine of estoppel does not apply and the trial court erred when it ruled otherwise. Point VI is granted.

*Point VIII: Interest On Judgment Per "Additional Payments" Clause*

 The Volkswagen policy contained an "ADDITIONAL PAYMENTS" section that obligated Appellant to "pay, in addition to **our** limit of liability ... [i]nterest on damages awarded in any suit **we** defend." Relying on that provision, the trial court ruled that Appellant was contractually obligated to pay interest on the $953,000 judgment from the date of its entry, February 26, 1997.

Appellant's eighth point maintains that awarding interest per this policy provision was error because the "prerequisite to the application of the 'Additional Payments' provision" was not met. Specifically, Appellant argues the interest payment clause

is only triggered in a suit that Appellant defends; that Appellant offered to defend Defendant (albeit under a reservation of rights), but Defendant declined that offer; consequently, Appellant would have us hold that the additional payments provision was not implicated. We find no merit in that argument.

 When issues arise on whether a claim is covered by a policy, an insurer's decision to defend only under a reservation of rights is a risky one. *Ballmer v. Ballmer*, 923 S.W.2d 365, 369 (Mo.App.1996). In part this stems from the fact that "[i]nsurers cannot force insureds to accept a reservation of rights defense." *Id.* at 369[7]. To explain, if the insured rejects the conditional defense and the insurer stands by its position of no coverage, it (the insurer) loses control of the litigation. This case is a classic example of the "loss of control" risk for an insurer who opts not to defend, i.e., eighteen years of litigation without any control by Appellant and a judgment in place for nine years.

Since Defendant was entitled to reject Appellant's conditional offer to defend and did so, Appellant was left with three options: (1) It could have represented Defendant sans the reservation of rights defense and thus fulfilled its contractual obligation to defend; or (2) It could have withdrawn from representing Defendant altogether; or (3) It could have filed a declaratory judgment action and obtained a ruling as to the scope of its policy's coverage. *Id.* at 369[8]. Had Appellant chosen the third path (declaratory judgment), it might have gotten the underlying wrongful death suit stayed. *Id.* at 369–70. That did not happen, however.

Instead, Appellant chose the second route, namely, it withdrew from representing Defendant altogether. Once Appellant decided Defendant was not covered and opted to withdraw from representing Defendant, it was bound by that decision and

its consequences. *State ex rel. Rimco, Inc. v. Dowd*, 858 S.W.2d 307, 309 (Mo. App.1993). Because Appellant erred in its assessment of the coverage issue, its refusal to provide Defendant a defense was unjustified and was a breach of the insurance contract. *Miller v. Secura Ins. and Mut. Co. of Wis.*, 53 S.W.3d 152, 155[2] (Mo.App.2001) (citing *Whitehead v. Lakeside Hospital Association*, 844 S.W.2d 475, 481 (Mo.App.1992)). Relying on *Miller*, we hold that Appellant's "ADDITIONAL PAYMENTS" contract clause obligated it to pay interest on the damages awarded ($953,000) because this was a suit it should have defended. 53 S.W.3d at 156. Its decision not to defend turned out to be a breach of its contractual obligation; consequently, it owes damages for that breach, including post-judgment interest. *Id.*

Contrary to what Appellant argues in Point VIII, the trial court did not err when found Appellant owed interest on the $953,000 judgment. Point denied.

*Point IX: Error In Award Of Interest On All Three Policies*

The trial court found Defendant owed Plaintiffs $953,000 (the judgment amount) plus $713,653.83 (post-judgment interest on $953,000 at nine percent per annum from February 27, 1987, to June 26, 2005), plus court costs of $1,100.20, making a total owed by Defendant to Plaintiffs of $1,667,754.83. It also found that Appellant's three policies afforded $2,440,961.49 in coverage for Defendant.[14] With the latter as its premise, the court entered judgment for Plaintiffs and against Appellant for $1,667,754.03. Appellant's ninth point charges the trial court erred in so ruling. This court agrees. For the reasons given earlier, Respondents cannot access coverage under the Vega and Nova policies and

to the extent the trial court ruled otherwise, it committed reversible error. Point granted.

The judgment of the trial court is reversed to the extent that it awarded Plaintiffs $100,000 and post-judgment interest under the Vega policy. The judgment of the trial court is reversed to the extent it awarded Plaintiffs $100,000 and post-judgment interest under the Nova policy. The judgment of the trial court is affirmed to the extent it awarded Plaintiffs $100,000, post-judgment interest on $953,000, and costs under the Volkswagen policy. The cause is remanded with directions that the trial court enter judgment in accordance with this opinion.

BARNEY, J., and BATES, C.J., concur.

---

14. The court found $2,440,961.49 was the potential coverage by proceeding as follows: Defendant was covered by three policies. Each policy provided coverage up to $813,653.83 ($100,000 bodily injury coverage plus $713,653.83 post-judgment interest), so that there was a total of $2,440,961.49 available.