

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

ROBERT COFFIN, )
)
Appellant, ) **WD87120**
v. )
) **OPINION FILED:**
) **December 24, 2024**
FARM BUREAU TOWN & COUNTRY )
INSURANCE COMPANY )
OF MISSOURI, et al., )
)
Respondent. )

**Appeal from the Circuit Court of Cass County, Missouri**
**The Honorable Stacey Lett, Judge**

**Before Division Four**: **Anthony Rex Gabbert, Chief Judge, Presiding,**
**Karen King Mitchell, Judge and Alisha O'Hara, Special Judge**

Robert Coffin appeals the grant of summary judgment in favor of Farm Bureau Town & Country Insurance Company of Missouri on his claim for breach of insurance contract. Coffin raises four points on appeal: (1) the court erred in entering judgment in the amount of only $50,000, rather than $200,000, under the uninsured motorist (UM) provision of the insurance contract because the policy language was ambiguous and should have been construed in favor of greater coverage; (2) the court erred in entering judgment in the amount of only $50,000 pursuant to an exclusion that Coffin claims

violates public policy; (3) the court erred in entering judgment in the amount of only $50,000 because the court improperly disregarded the underlying default judgment Coffin obtained against the uninsured driver; and (4) the court erred in failing to award pre-judgment interest running from the time Coffin obtained his default judgment against the uninsured driver. Finding no error, we affirm.

## Background[1]

On September 16, 2019, Coffin was injured in an automobile accident. At the time, Coffin was working in his capacity as a law enforcement officer and driving a Cass County Sheriff's patrol vehicle. Coffin was involved in a police chase with a vehicle driven by Charles F. Rice, Jr., an uninsured motorist.

Coffin was a named insured on an automobile policy issued by Farm Bureau. The policy provided UM coverage for two separate personal vehicles, each with a limit of

---

[1] Because the underlying case was decided under Rule 74.04, pertaining to summary judgment, we consider only those facts presented in the statements of uncontroverted material facts and responses thereto. *See Green v. Fotoohighiam*, 606 S.W.3d 113, 121 (Mo. banc 2020) ("any court—whether it be the circuit court addressing summary judgment in the first instance or an appellate court reviewing an entry of summary judgment—need only consult what was properly put before it by way of Rule 74.04(c) paragraphs and responses"). Many of the facts were presented in Farm Bureau's response to Coffin's motion for summary judgment and its own cross-motion for summary judgment. Because Coffin did not respond to the additional facts alleged by Farm Bureau, we consider those facts admitted. Rule 74.04(c)(2). All rule references are to the Missouri Supreme Court Rules (2024).

Additionally, Farm Bureau argues that Coffin's statement of facts in his appellate brief violates Rule 84.04(c) by containing argument, rather than limiting its content to "a fair and concise statement of the facts," and Farm Bureau urges us to dismiss this appeal in response. While we agree with Farm Bureau that Coffin's statement of facts improperly contains matters outside of the summary judgment record made below, we decline to dismiss the appeal on those grounds. Instead, we limit our review to only those facts properly presented in the summary judgment record.

$100,000 per person/$300,000 per occurrence.  The coverage provision of the policy

stated,

## PART C – UNINSURED MOTOR VEHICLE COVERAGE

Subject to the terms of this contract, you have this coverage if an Uninsured Motor Vehicle appears on the Automobile Declaration, and the appropriate premium for the Limits shown has been paid.

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle.  The bodily injury must be sustained by an insured and caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

* * *

## When PART C – UNINSURED MOTOR VEHICLE COVERAGE Does Not Apply

There is no coverage under PART C – UNINSURED MOTOR VEHICLE COVERAGE:

* * *

2.  for damages sustained by an insured if benefits are:

    a.  payable to, or on behalf of, such insured under any compensation law as a result of the same accident; or
    b.  required by any compensation law to be provided to, or on behalf of, such insured as a result of the same accident.

    This exclusion 2. does not apply to the amounts of coverage mandated by any uninsured motorist insurance law or financial responsibility law applicable to the accident, but does apply to coverages which are not mandated by such laws.

(bold typeface omitted).  The policy defined "compensation law" as

[a]ny law under which benefits are paid to a person as compensation for the effects of bodily injury, without regard to fault, because of that person's status as an employee or beneficiary.  It includes, but is not limited to, workers compensation laws, unemployment compensation laws, disability laws, the Federal Employers' Liability Act and the Jones Act.

3

Following his accident, Coffin sent Farm Bureau a copy of the police report and a file-stamped copy of a petition for damages filed by Coffin against Rice. On August 5, 2020, Coffin sent Farm Bureau a copy of his motion for default judgment against Rice, as well as a notice of a hearing on the motion and Coffin's medical records and bills. Farm Bureau did not seek to intervene in the underlying case between Coffin and Rice. On August 24, 2020, Coffin obtained a default judgment against Rice in the amount of $500,000. Coffin also received $12,741.96 in temporary, total disability benefits and $109,599.81 in medical benefits from a workers' compensation claim arising from the accident.

On March 21, 2022, because Farm Bureau had not paid Coffin any benefits, Coffin filed a petition for damages, alleging breach of the insurance contract and seeking "judgment against [Farm Bureau] for the amount of the total combined uninsured motorist coverage limit due under the Policy." Coffin moved for summary judgment, arguing that, because Farm Bureau failed to intervene in the action between Coffin and Rice, it was now bound by the liability and damage determinations and needed to pay up to the policy limits of liability for UM coverage, stacking that coverage from each of the two covered vehicles for a total of $200,000.[2] Farm Bureau filed a cross-motion for summary judgment, arguing that the underlying judgment had not determined coverage under the policy and, therefore, was not binding on that issue. Farm Bureau further

---

[2] In the motion for summary judgment, Coffin requested—for the first time— "interest at the rate required by law" in addition to the UM policy limits as damages. Coffin's first amended petition did not seek interest on any judgment entered against Farm Bureau.

4

argued that, under the plain language of the policy, because Coffin had received workers compensation benefits for the same accident, he was entitled to no more than $25,000 per covered vehicle under the policy for a total of $50,000. The trial court held a hearing, wherein it received argument from both Coffin and Farm Bureau.

At the hearing, Coffin noted that his summary judgment motion requested interest. And he argued that, though he believed the damages were liquidated at the time the default judgment was entered against Rice, he was "not going to ask for interest in this case from that date." Instead, he noted that his "only request," if the court found in his favor, was "an entry that there should be judgment paid at 9 percent from the date of your judgment, Judge."

Following the hearing, the trial court entered a judgment (breach-of-contract judgment), denying Coffin's motion for summary judgment and granting Farm Bureau's cross-motion for summary judgment and ordering Farm Bureau to pay Coffin $50,000, representing a combination of the two UM coverages required by § 379.203[3] for the two vehicles covered by Farm Bureau's policy, along with post-judgment interest under § 408.020, running from the date of the breach-of-contract judgment. Coffin appeals.

## Standard of Review

"An appellate court reviews the grant of summary judgment *de novo*." *Johnson v. Am. Family Mut. Ins. Co., S.I.*, 694 S.W.3d 529, 531 (Mo. App. W.D. 2024). "Summary judgment is proper only if there are no genuine issues of material fact and the moving

---

[3] All statutory references are to the Revised Statutes of Missouri (Cum. Supp. 2023).

5

party is entitled to judgment as a matter of law." *Id.* We view the record "in the light most favorable to the party against whom summary judgment was entered." *Id.*

**Analysis**

Coffin raises four points on appeal: (1) the court erred in entering judgment in the amount of only $50,000, rather than $200,000, under the uninsured motorist (UM) provision of the insurance contract because the policy language was ambiguous and should have been construed in favor of greater coverage; (2) the court erred in entering judgment in the amount of only $50,000 pursuant to an exclusion that Coffin claims violates public policy; (3) the court erred in entering judgment in the amount of only $50,000 because the court improperly disregarded the underlying default judgment Coffin obtained against the uninsured driver; and (4) the court erred in failing to award prejudgment interest running from the time Coffin obtained his default judgment against the uninsured driver.

## I. The policy language was unambiguous.

In his first point on appeal, Coffin argues that Farm Bureau's policy language regarding UM coverage was ambiguous and, therefore, must be construed against Farm Bureau such that it owes him the full limits of liability covering both insured vehicles. We disagree.

Though ambiguity was not alleged as a basis for Coffin's motion for summary judgment, he did raise the issue in his reply suggestions, and the court below addressed it; therefore, it is properly before this court for our consideration. *See Heffernan v. Reinhold*, 73 S.W.3d 659, 663 (Mo. App. E.D. 2002) (noting that appellate courts may

6

address "those issues properly raised in the defendants' motions for summary judgment and the responses thereto").

"[W]hen analyzing an insurance contract, the entire policy and not just isolated provisions or clauses must be considered." *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. banc 2009) (quoting *Versaw v. Versaw,* 202 S.W.3d 638, 643 (Mo. App. S.D. 2006)). "If an entire policy is analyzed in context and found to be unambiguous, i.e., its language is plain, straightforward, and susceptible of only one meaning, the rules of construction are inapplicable, and absent public policy to the contrary, the contract will be enforced as written." *Id.* (quoting *Versaw*, 202 S.W.3d at 643).

Coffin argues that Farm Bureau's policy language with respect to UM coverage mirrors that found to be ambiguous by the Missouri Supreme Court in *Rice*, and, therefore, we should reverse the trial court's grant of summary judgment. But, as Farm Bureau points out, the policy language at issue in *Rice* significantly differs from the policy language at issue here. In *Rice*, the Court held that the policy's UM provisions were ambiguous insofar as they purported to grant coverage in one place and take it away in another. *Id.* at 48. The coverage language provided,

> *Subject to the limit of our liability stated in this Coverage*, we will pay damages for bodily injury sustained by an insured which that insured, or that insured's legal representative, is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership or use of the uninsured motorist vehicle.

*Id.* (emphasis added). While the exclusionary language provided,

Coverage E does not apply:

(3) To damages sustained by any insured if benefits are:

7

(a) payable to, or on behalf of, such insured under any compensation law, as a result of the same accident, or

(b) required by any compensation law to be provided to, or on behalf of, such insured as a result of the same accident.

This exclusion does not apply to the amounts of coverage mandated by any uninsured motorist insurance law or financial responsibility law applicable to the accident, but does apply to any amounts exceeding that mandate, and to coverages which are not mandated by such laws.

*Id.* In reviewing both, the Court determined, "These provisions are entirely inconsistent and cannot be reconciled." *Id.* at 48. The Court specifically noted that "the uninsured motorist provision starts with a reference to providing coverage up to the limit of liability in the declaration provisions, followed by provisions to exclude coverage if any benefits are provided to an insured under any compensation law." *Id.*

Here, however, the coverage provision does *not* begin with a reference to providing coverage up to the limit of liability; instead, it begins by noting that coverage is "[*s*]*ubject to the terms of this contract*." (Emphasis added.) Thus, unlike the policy in *Rice*, which purported to grant coverage up to the limits of liability, Coffin's policy expressly limited coverage based on the terms of the contract, one of which is the other-compensation-law exclusion.

Language very similar to that in Coffin's policy was held to be ***un***ambiguous in *Floyd-Tunnell v. Shelter Mutual Insurance Company*, 439 S.W.3d 215 (Mo. banc 2014). In *Floyd-Tunnell*, the Court determined that a phrase indicating that coverage was "'subject to all conditions and exclusions, and limitations of our liability stated in this policy' . . . clearly and unambiguously informed [policyholders] that coverage will be

8

limited to $25,000" if the applicable exclusion applied. *Id*. at 221. Thus, the similar language in Coffin's policy also unambiguously informs policyholders that their coverage is not absolute and may be limited by other provisions. And the other-compensation-law exclusion expressly indicated that UM coverage did *not* apply beyond limits required by law to damages for which the insured received benefits under a compensation law as a result of the same accident. Because Coffin received benefits from a workers' compensation claim arising from the accident, the exclusion applied, meaning no coverage beyond the minimum required by law, and that is what the court awarded.

Point I is denied.[4]

---

[4] In arguing that the policy was ambiguous, Coffin also relies on the declarations page as granting coverage up to the limits of liability. In making this argument, Coffin ignores additional language on the declarations page indicating, "All coverages and limits are subject to terms and conditions set forth in your policy booklet," and the fact that "policies declarations pages do not grant any coverage." *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. banc 2014). Coffin further argues ambiguity from the following language:

> EFFECT OF UNINSURED MOTORIST INSURANCE LAWS OR FINANCIAL RESPONSIBILITY LAWS
> If an applicable uninsured motorist law or financial responsibility law renders any provision of this Part of the policy unenforceable, we will provide only the minimum limits mandated by such law. However, if other insurance covers an insured's claim and provides those required minimum limits, the provisions of this policy are fully enforceable.
> All provisions of this Part of the policy which exceed the requirements of any applicable uninsured motorist insurance law or financial responsibility law, or are not governed by it, are fully enforceable.

This policy language, however, was not part of the summary judgment record below; accordingly, we do not consider it. Yet, even if we did, we fail to see how it would render the policy ambiguous insofar as it is *consistent* with the exclusion's exception for "amounts of coverage mandated by any uninsured motorist insurance law or financial responsibility law applicable to the accident."

9

## II. Farm Bureau's workers' compensation law exclusion does not violate public policy.

In Point II, Coffin argues that the court's grant of judgment in the amount of $50,000, rather than $200,000, violated public policy because the intent of § 379.203 is to set a floor, rather than a ceiling, for UM coverage. In making this argument Coffin characterizes the lower court's judgment as capping claims such as his at the minimum UM coverage required by statute; but Coffin misstates the lower court's judgment.

All automobile insurance policies must include coverage in an amount "not less than the limits for bodily injury or death set forth in section 303.030, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." § 379.203.1. The limits set forth in § 303.030.5 are

> not less than twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in injury to or destruction of property, to a limit of not less than twenty-five thousand dollars because of injury to or destruction of property of others in any one accident.

As Coffin notes, "[t]he purpose of section 379.203 is to establish a minimum level of protection equivalent to the liability coverage the insured would have received had the insured been involved in an accident with an insured tortfeasor." *Rice*, 301 S.W.3d at 46. But, contrary to Coffin's argument, the court below did not suggest that § 379.203 sets a cap on UM insurance coverage. Instead, the court rejected Coffin's argument that the UM coverage exclusion was unenforceable under *Rice* and recognized that § 379.203

10

requires *all* insurance contracts to provide UM benefits of at least $25,000 per vehicle.[5] So the court awarded Coffin the statutorily required minimum of $25,000 per vehicle on the policy.

While Coffin is correct that "public policy prohibits enforcement of [other-compensation-law offsets to] uninsured motorist polic[ies] up to $25,000[,] . . . parties to an insurance contract are free to include mutually agreed upon limitations and restrictions where such limitations and restrictions do not conflict with a statute or public policy." *Williams v. Cas. Reciprocal Exch*., 929 S.W.2d 802, 809 (Mo. App. W.D. 1996). Thus, other-compensation-law exclusions are invalid only "to the extent [they reduce coverage below the] mandatory limit required by law"; they are "otherwise valid as to any coverage exceeding the mandatory amount." *Ezell v. Columbia Ins. Co*., 942 S.W.2d 913, 919 (Mo. App. S.D. 1996); *see also Am. Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 290 (Mo. App. S.D. 2003) (holding that "public policy considerations apply only up to the mandatory minimum limit of $25,000"); *Adams v. Julius*, 719 S.W.2d 94, 96 (Mo. App. E.D. 1986) ("While § 379.203 will be applied liberally to invalidate attempts by insurers to reduce benefits under applicable coverage, it cannot create coverage.").

---

[5] Coffin has not argued, in either the circuit court or on appeal, that the other-compensation-law exclusion should be interpreted as a set-off to merely reduce the UM coverage by the amount an insured actually receives under a compensation law, rather than eliminate UM coverage entirely. Instead, Coffin's argument has consistently been that the other-compensation-law exclusion is *wholly unenforceable*. Accordingly, we do not address whether the exclusion may be read to reduce Farm Bureau's UM coverage by the amount of Coffin's recovery on his worker's compensation claim, rather than eliminate coverage entirely.

11

Because Farm Bureau's policy excludes coverage for amounts *over* the mandatory minimum, it does not violate public policy.

Point II is denied.[6]

### III. The underlying judgment did not bar Farm Bureau from litigating coverage.

In his third point on appeal, Coffin argues that the trial court erred in finding that Farm Bureau's decision not to intervene in the underlying lawsuit between Coffin and Rice was irrelevant. We disagree.

Coffin argues that Farm Bureau is bound by the damages determination in the underlying litigation because it had the option but chose not to intervene. The trial court recognized that the underlying lawsuit determined both liability and damages as between Coffin and Rice, but it also recognized that the underlying lawsuit did not determine *policy coverage* for the damages, which was the issue before the court in the matter here.

"[I]f a UM insurer has adequate notice of the claim and an opportunity to intervene in the action against the uninsured motorist, the insurer is estopped from relitigating the issues of liability and damages once they have been decided in the underlying lawsuit." *Nervig v. Workman*, 285 S.W.3d 335, 340 (Mo. App. S.D. 2009). But "the non-intervention in an action . . . by an insurer who contests coverage does not

---

[6] In his brief, Coffin also argues that Farm Bureau's policy renders any additional UM coverage above the statutory minimums illusory. Coffin did not include this claim in his point relied on; thus, we do not consider it. *See Lamy v. Stahl Speciality Co.*, 649 S.W.3d 330, 336 (Mo. App. W.D. 2022) ("claimed errors that are raised only in the argument portion of the brief but not contained in a point relied on are not preserved for our review").

estop the insurer from later litigating that issue." *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 480 (Mo. App. W.D. 1992).

Thus, while the underlying lawsuit between Coffin and Rice precluded Farm Bureau from challenging either Rice's liability or the amount of Coffin's damages, it did not affect Farm Bureau's right to contest coverage in Coffin's breach-of-insurance-contract action. Accordingly, the trial court was correct in noting that the judgment in the underlying lawsuit was irrelevant to the issue before it—whether Farm Bureau's policy provided coverage to Coffin for his damages.

Point III is denied.

## IV.    Coffin waived his request for pre-judgment interest.

In his final point, Coffin argues that the trial court erred in awarding interest from the date of the underlying judgment, rather than the date of the judgment in Coffin's action against Rice. We disagree.

To begin, this point is not preserved for review, as Coffin did not file a motion to amend the judgment, challenging the absence of an award of pre-judgment interest. While, generally, "in cases tried without a jury . . . , neither a motion for a new trial nor a motion to amend the judgment . . . is necessary to preserve any matter for appellate review," that is true only "if the matter was previously presented to the trial court." Rule 78.07(b). Here, the first mention of interest came in Coffin's initial summary judgment motion (not in any pleading), and it failed to specify any request for *pre-judgment* interest, instead simply requesting "interest at the rate required by law." The same request was reiterated in each of Coffin's summary judgment filings.

13

The first mention of pre-judgment interest came during the hearing on the motions for summary judgment. And, in that hearing, Coffin's attorney expressly disavowed any request for pre-judgment interest:

> Judge, additionally in the brief, I had brought up interest, and interest is a topic where we look at whether the damages were liquidated or unliquidated and at what time. My position on these cases is that the damages were liquidated when the judgment was entered. Now, that being said, *I'm not going to ask for interest in this case from that date. My only request is if the Court finds in our favor, we would just ask for an entry that there should be judgment paid at 9 percent from the date of your judgment, Judge.* Just to clean that issue up and avoid any confusion.

(Emphasis added.)

In light of Coffin's attorney's statement, it is not surprising that the trial court did not award pre-judgment interest. But, even setting that express waiver aside, if the court's judgment awarding only post-judgment interest were erroneous in Coffin's mind, he needed to preserve that claim by filing a motion to amend the judgment. *See Modine Mfg. Co. v. Carlock*, 510 S.W.2d 462, 472 (Mo. 1974) (holding that "complaints as to the allowance of interest, not raised in the motion for new trial, are not reviewable on appeal"). "It is fundamental that a trial court must be given an opportunity to review and correct an error before we are called upon to review it." *Edgewater Health Care, Inc. v. Health Sys. Mgmt., Inc.*, 752 S.W.2d 860, 869 (Mo. App. E.D. 1988). Because Coffin both waived and failed to preserve any claim of error related to an award of pre-judgment interest, we need not address when his damages may have been liquidated.[7]

_____

[7] Coffin argued during oral argument that he did not waive his claim for pre-judgment interest under § 408.020 because his statement identified above was in reference to § 408.040, rather than § 408.020. There is nothing in the record below to

14

Point IV is denied.

## Conclusion

The trial court did not err in granting summary judgment in favor of Farm Bureau on Coffin's breach-of-insurance-contract action. Its judgment is affirmed.

_____
Karen King Mitchell, Judge

Anthony Rex Gabbert, Chief Judge, Presiding and Alisha O'Hara, Special Judge, concur.

---

support this assertion. While the parties argued about whether § 408.020 governed pre-judgment interest in insurance contract actions, at no time did Coffin distinguish between §§ 408.020 and 408.040 in reference to his own request for interest.